IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ESTATE OF FATIMA NEAL, et al | * | |
| Plaintiffs | * | |
| v. | * | Case no.:  15-CV-03278-ELH |
| STATE OF MARYLAND, et al | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL TESTMONY AND DOCUMENTS

Defendants Wexford Health Sources, Inc. ("Wexford"), Jocelyn El-Sayed M.D., Getachew Afre, M.D., and Karen McNulty, Najma Jamal, Ebre Ohaneje, and Anike Ajayi (collectively the "Nursing Defendants"), by and through their attorneys, J. Michael Sloneker and Megan J. McGinnis file this Response in Opposition to Plaintiff's Motion to Compel Testimony and Documents (ECF No. 128) and state:

**I.      BACKGROUND**

Plaintiff Sharon Bost, in her individual capacity and as the personal representative of the estate of her daughter, Fatima Neal ("Decedent"), alleges Decedent received inadequate medical care between November 1, 2012 and November 4, 2012, while Decedent was detained at the Baltimore City Detention Center ("BCDC").  (First Am. Compl., ECF No. 56).  Plaintiff alleges that Decedent was admitted into the BCDC infirmary in the early morning hours of November 1 with complaints of a headache and died of a stroke in the early morning hours of November 4 after being taken to a hospital.  (First Am. Compl. ¶¶ 63; 125-43).  Plaintiff asserts that Decedent suffered multiple strokes during her three days in the infirmary.  (First Am. Compl. ¶ 2).  Bost claims that Wexford-employed medical staff either failed to recognize or deliberately ignored

Decedent's strokes and repeatedly failed or refused to send Decedent to a hospital for emergency care until it was too late. (First Am. Compl. ¶¶ 153-68).

In addition to asserting state law claims for medical malpractice, wrongful death, and intentional infliction of emotional distress, Plaintiff has also brought claims against all defendants under 42 U.S.C. § 1983. Plaintiff alleges that each of the Individual Medical Defendants caused Decedent's injury and death as a result of his or her deliberate indifference to Decedent's medical needs. Plaintiff's § 1983 claim against Wexford is based on a *Monell* theory of liability.[1] She claims that Wexford's policies, practices, and customs were the motivating force behind the Individual Medical Defendants' deliberate indifference to Decedent resulting in Decedent's injury and death.

## II.   ARGUMENT

Plaintiff's Motion seeks an order (1) compelling Wexford to produce a November 2012 Monthly Incident Review Report and a 2012 Mortality Log, and (2) re-opening the depositions of the Nursing Defendants, Dr. Afre, and Dr. El-Sayed. First, Wexford maintains that the documents Plaintiff seeks have been properly withheld under a claim of privilege. If the Court determines that the documents are not privileged, however, they are relevant only to Plaintiff's *Monell* claim, and for the reasons set forth in Defendants' Motion to Bifurcate and Stay Discovery on Plaintiff's *Monell* Claim ("Motion to Bifurcate") (ECF No. 130), Wexford requests

---

[1] The *Monell* claim against Wexford is stated in Count Two of Bost's First Amended Complaint. In Count One of her pleading, Bost includes Wexford as a § 1983 defendant along with all of the individuals, apparently pursuing a theory of *respondeat superior* liability (since, as a corporation, Wexford can act only through its agents and employees). Bost's Count One fails to state a claim against Wexford because § 1983 does not permit a private corporation acting under color of state law to be held liable under a theory of *respondeat superior* simply because it employs tortfeasors. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690-92 (1978) (holding that local governing bodies "cannot be held liable under § 1983 on a *respondeat superior* theory," and may be held liable only when their policies or customs cause their employees to violate a person's federally protected rights); *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 729 (4th Cir. 1999) (stating that Monell "principles are equally applicable to a private corporation acting under color of state law"); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982) (same).

that the Court issue a protective order that it need not produce these documents at this time.[2] Likewise, Dr. Afre requests that the Court deny Plaintiff's request to re-open her deposition to question her about Wexford's mortality and morbidity conference, either permanently because her testimony was properly withheld as privileged, or temporarily for the reasons set forth in Defendants' Motion to Bifurcate.[3]

Dr. El-Sayed, on the other hand, requests that the Court deny Plaintiff's request to re-open her deposition outright, because aside from the contents of her discussions with defense counsel, she did not withhold any testimony on the basis of privilege. Finally, the Nursing Defendants did not withhold testimony under a claim of peer review privilege. Instead, they withheld testimony concerning proceedings before the Maryland State Board of Nursing, which is based on a privilege that was not addressed in Plaintiff's Motion to Compel or in any of the cases cited therein. Since Plaintiff's Motion does not address the privilege attendant to proceedings before the Maryland State Board of Nursing, it does not provide a basis for re-opening the depositions of the Nursing Defendants.

### A.   Legal Standard

Under Federal Rule of Evidence 501, "[t]he common law—as interpreted by United States Courts in the light of reason and experience—governs a claim of privilege." Fed. R. Evid. 501. When "considering whether to recognize a privilege, a court must begin with 'the primary assumption that there is a general duty to give what testimony one is capable of giving, and that

---

[2] Moreover, to the extent that the disposition of Defendants' Motion to Bifurcate will be dispositive of most issues in this Motion to Compel, Defendants respectfully request that the Court defer ruling on this Motion until it rules on the Motion to Bifurcate.

[3] And without rehashing the propriety of bifurcation, if the Court determines that the documents and information sought by way of Plaintiff's Motion to Compel are not privileged, they are prime examples of the extensive nature of the evidence that might be within the scope of discovery only on Plaintiff's *Monell* claim, demonstrating the effort and expense that might be avoided by bifurcating and staying discovery on that claim.

any exemptions which may exist are distinctly exceptional.'" *Virmani v. Novant Health Inc.*, 259 F.3d 284, 287 (4th Cir. 2001) (quoting *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996)).  However, the common law is "flexible," and privileges under Rule 501 should be determined on a "case-by-case basis," as the rule "did not freeze the law governing the privileges of witnesses in federal trials at a particular point in our history, but rather directed federal courts to 'continue the evolutionary development of testimonial privileges.'"  *Jaffee*, 518 U.S. at 8-9 (citations omitted).  In determining whether to recognize a privilege, courts weigh the public ends served by the asserted privilege against the likely evidentiary benefit that would result from the denial of the privilege.  *Id.* at 11.

Additionally, "the policy decisions of the States bear on the question whether federal courts should recognize a new privilege or amend the coverage of an existing one."  *Id.* at 12-13.  "Although most states have statutes creating a medical review committee privilege, the wording of the statutes varies considerably."  *St. Joseph Med. Ctr., Inc. v. Cardiac Surgery Associates, P.A.*, 896 A.2d 304, 316 (Md. 2006).  The provision of the Maryland Code that creates the peer review privilege provides:

> (d)(1) Except as otherwise provided in this section, the proceedings, records, and files of a medical review committee are not discoverable and are not admissible in evidence in any civil action . . .
>
> (e) Subsection (d)(1) of this section does not apply to:
>    (1) A civil action brought by a party to the proceedings of the medical review committee who claims to be aggrieved by the decision of the medical review committee; or
>    (2) Any record or document that is considered by the medical review committee and that otherwise would be subject to discovery and introduction into evidence in a civil trial.

Md. Code Ann., Health Occ. § 1-401.  As to the policy underlying the privilege, the Maryland Court of Appeals has adopted the reasoning of the Supreme Court of Florida concerning Florida's peer review privilege:  "[t]he policy of encouraging full candor in peer review

4

proceedings is advanced only if all documents considered by the committee or board during the peer review or credentialing process are protected. Committee members and those providing information to the committee must be able to operate without fear of reprisal." *St. Joseph Med. Ctr.*, 896 A.2d at 317 (quoting *Cruger v. Love*, 599 So. 2d 111, 114 (Fla. 1992)).

### B.  November 2012 Monthly Incident Review Report and a 2012 Mortality Log

Although several other district and circuit courts have considered a peer review privilege in the context of a § 1983 deliberate indifference claim stemming from medical treatment of an inmate, neither this Court, the Fourth Circuit, nor the Supreme Court has confronted the issue.[4] Moreover, the privileges addressed by the Supreme Court and Fourth Circuit cases cited in Plaintiff's Motion are distinguishable from the privilege at issue in this case in several critical respects that render those cases inapposite. Additionally, contrary to Plaintiff's assertion, there exists a federal common law self-critical analysis privilege, under which this Court has upheld the non-disclosure of medical peer review documents and testimony, albeit not in the context of a § 1983 deliberate indifference case.

In support of her assertion that a peer review privilege does not exist in federal civil rights litigation, Plaintiff relies heavily on *University of Pennsylvania v. EEOC*, 493 U.S. 182 (1990), and *Virmani v. Novant Health Inc.*, 259 F.3d 284 (4th Cir. 2001). *University of Pennsylvania* involved an allegation that a university had committed discrimination in determining the tenure status of a professor, and under a claim of peer-review privilege, the university withheld evaluations of the professor that it had used in making its tenure determination, documents reflecting internal deliberations of the faculty committees considering

---

[4] To the extent that Plaintiff contends the issue was confronted by this Court in *Duvall v. Ehrlich*, No. 94-cv-2541-ELH, Defendants note that Judge Motz granted Plaintiff's Motion to Compel in that case by way of a paperless order, which completely precludes evaluation of the Court's rationale.

5

applications for tenure, and comparable portions of the tenure-review files of five other candidates. 493 U.S. at 186. *Virmiani* involved an allegation by a physician that a hospital had committed discrimination in suspending and then terminating his staff membership and privileges, and under a claim of peer-review privilege, the hospital withheld documentation of the hospital peer review committee's records of its physician reviews. 259 F.3d at 286. In short, both cases involved claims of peer review privilege asserted by an institution withholding documentation of the very decision-making process that had been conducted in an allegedly discriminatory fashion.

In both cases the courts determined that it was inappropriate to allow the institutions to claim a peer review privilege over documentation of the peer review proceedings at issue, reasoning that without documentation of the proceedings in which the discriminatory activity allegedly took place, it would be virtually impossible to establish that the proceedings took place in a discriminatory manner. *Univ. of Pa.*, 493 U.S. at 193 ("disclosure of peer review materials will be necessary in order for the Commission to determine whether illegal discrimination has taken place . . . 'The peer review material itself must be investigated to determine whether the evaluations are based in discrimination and whether they are reflected in the tenure decision'" (quoting *EEOC v. Franklin and Marshall Coll.*, 775 F.2d 110, 116 (3d Cir. 1985)); *Virmiani*, 259 F.3d at 288 ("[Plaintiff] has alleged that the peer review proceedings themselves were conducted in a discriminatory manner. The best evidence regarding whether [Plaintiff] was properly suspended for his medical actions, rather than improperly suspended due to his race and national origin, is to be found in the process by which the decision to suspend him was reached.").

In reaching its holding, the Fourth Circuit in *Virmani* distinguished the case before it from a medical malpractice case, stating "in contrast to a discrimination case, in which the

6

plaintiff's claim arises out of the peer review proceedings, a plaintiff's claim in a medical malpractice case arises from actions that occurred independently of the review proceedings." In this case, Plaintiff's claims do not arise out of the preparation of the November 2012 Monthly Incident Review Report and the 2012 Mortality Log.  Rather, Plaintiff's claims arise from actions that occurred independently of the completion of those documents.  Accordingly, *University of Pennsylvania* and *Virmani* are distinguishable from and should not control the outcome of the privilege at issue here.

Moreover, this court has previously recognized "a self-critical analysis privilege under federal common law in the context of a request for discovery of medical review committee materials."  *Brem v. DeCarlo, Lyon, Hearn & Pazourek, P.A.*, 162 F.R.D. 94, 101 (1995) (quoting *Bredice v. Doctors Hosp., Inc.*, 50 F.R.D. 249 (D.D.C. 1970)).  In *Brem*, this Court identified three criteria that must be present for the self-critical analysis privilege to apply:  1) the information sought must result from an internal review conducted to improve procedures or products; 2) the party conducting the review must have intended that the information remain confidential in order to preserve the free exchange of ideas; and 3) the information must be such that permitting discovery of it would curtail that free exchange.  162 F.R.D. at 101 (citing *Etienne v. Mitre Corp.*, 146 F.R.D. 145, 147 (E.D. Va.1993)); *see also Tyndall v. Berlin Fire Co.*, No. 13-cv-2496-ELH, 2014 WL 736830, at *2 (D. Md. Dec. 23, 2014) (applying the self-critical analysis privilege in a Title VII case).  The monthly incident report and mortality log that Plaintiff seeks resulted from internal Wexford monitoring and review policies, the documents are developed and maintained to improve Wexford's quality of care, and Wexford certainly intended the documents to remain confidential when they were created.  Additionally, "the public interest in protecting the confidentiality of this information, and thereby ensuring the efficacy of quality

assurance reviews," particularly in the context of medical care, is undoubtedly "paramount." *See Tyndall*, 2014 WL 736830, at *2. If the Court permits discovery of these documents, it is unlikely that the participants to Wexford's peer review proceedings would remain willing to cooperate in a full and frank manner, thereby undermining the value of such inquiries to improve the quality of medical care. *See, e.g., St. Joseph Med. Ctr.*, 896 A.2d at 317 (the peer review privilege "'was clearly designed to provide that degree of confidentiality necessary for the full, frank medical peer evaluation which the legislature sought to encourage.' Without the privilege, information necessary to the peer review process could not be obtained." (quoting *Cruger*, 599 So. 2d at 114 (internal citations omitted))).

Moreover, in determining whether an asserted privilege should be recognized under federal law, "[t]he court should weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege." *Mem'l Hosp. for McHenry Cty., v. Shadur*, 664 F.3d 1058, 1061 (1981). Here, the "need for truth" is far less compelling than in cases involving allegations of civil rights violations that occurred during the peer review process itself. At the time Wexford completed the November 2012 Monthly Incident Review Report and the 2012 Mortality Log, the constitutional violations Plaintiff alleges had already occurred. Any opinions related to the care the Individual Medical Defendants provided to Decedent that are expressed in peer review documents are not relevant to whether Decedent's death was the result of deliberate indifference on the part of the Individual Medical Defendants, and Plaintiff's inability to obtain these documents will not prevent her from establishing her claims against them. Indeed, a great deal of discovery has already taken place on Plaintiff's claims against the Individual Medical Defendants. As noted in Defendants' pending Motion to Bifurcate, Plaintiff has deposed eight of the nine Individual Medical Defendants for approximately six hours and

fifteen minutes each, reserving the remaining forty-five minutes in case the Court determines that Plaintiff is entitled to financial discovery in support of her punitive damages claims. Additionally, Wexford and the Individual Medical Defendants have produced over 3,900 pages of documents.  If Plaintiff is unable to establish that the Individual Medical Defendants were deliberately indifferent to Decedent's medical needs, it not for want of evidence relevant to her claims.  The fact that the relevant evidence she has obtained fails to demonstrate that the Individual Medical Defendants were deliberately indifferent to Decedent's medical needs does not give her a license to fish for evidence in privileged materials.  Accordingly, Wexford respectfully requests that the Court recognize the self-critical analysis or peer review privilege under the circumstances of this case and deny Plaintiff's Motion to Compel the November 2012 Monthly Incident Review Report and the 2012 Mortality Log.

However, if the Court determines that these documents are not privileged, Wexford requests that the Court nevertheless deny Plaintiff's Motion to Compel on the grounds that the November 2012 Monthly Incident Review Report and the 2012 Mortality Log are not within the scope of discovery on Plaintiff's claims against the Individual Medical Defendants.[5] Specifically, although relevance and proportionality, rather than admissibility, are the appropriate metrics for determining whether information falls within the scope of discovery, Wexford notes that the November 2012 Monthly Incident Review Report and the 2012 Mortality Log are neither relevant to nor admissible on Plaintiff's claims against the Individual Medical Defendants in this case.  *See* Fed. R. Civ. P. 26(b)(1).  Indeed, in the § 1983 deliberate indifference cases cited by Plaintiff in which district courts from outside of this circuit deemed

---

[5] To the extent that the November 2012 Monthly Incident Review Report and the 2012 Mortality Log are within the scope of discovery for Plaintiff's *Monell* claim, Wexford incorporates by reference the arguments set forth in Defendants' pending Motion to Bifurcate and Stay Discovery on Plaintiff's *Monell* Claim and asks that the Court deny Plaintiff's Motion to Compel the documents she seeks the grounds set forth in that motion.

medical peer review materials non-privileged, those courts emphasized the importance of the materials to the plaintiff's ability to establish the existence of unconstitutional policies, procedures, and customs. *Leon v. Cty. of San Diego*, 202 F.R.D. 631, 634 (2001) ("Proving municipal liability under § 1983 is no easy task . . . In light of the elements Plaintiffs must satisfy to prove their claims, the documents in question (nursing peer review records) do appear reasonably calculated to lead to the discovery of admissible evidence."); *Dunn v. Dunn*, 163 F. Supp. 3d 1196, 1204 (M.D. Ala. 2016) ("In a challenge to a massive system's provision of care for thousands of incarcerated patients . . . the efficacy of the system's feedback loop and its capacity for self-correction are critical to this court's assessment of whether they are functioning above the constitutional baseline."); *Jenkins v. DeKalb Cty., Ga.*, 242 F.R.D. 652 (N.D. Ga. 2007) ("Given the extreme difficulty prison inmates often face in obtaining evidence of jail customs or policies, it is unlikely that access to a prisoner's medical records is enough."); *Johnson v. Cook Cty.*, No. 15-C-741, 2015 WL 5144365, at *1 (N.D. Ill. Aug. 31, 2015) ("The Report Plaintiff seeks is directly relevant to the subject matter of his federal claim. According to the complaint, a litany of systemic failures and a widespread practice of deliberate indifference at the Jail caused [the decedent's] death."); *McLaughlin v. Tilden*, No. 13-cv-1600, 2015 WL 888921, at *2 (C.D. Ill. Feb. 27, 2015) ("The treatment of [the decedent] and the Defendants' procedures are clearly relevant to the factual circumstances of the Estate's claim. The estate contends that the defendants were responsible for [the decedent's] death because of those procedures and practices."); *Lewis v. Cty. of Henry*, No. 1:05-cv-.370-JDT-TAB, 2006 WL 1843336, at *1 (S.D. Ind. June 29, 2006) ("Plaintiff seeks information and documents concerning Defendant EMSA's custom, policy and practice concerning healthcare at Clark County Nevada's

Detention Center . . . The evidence sought by Plaintiff goes to the heart of Plaintiff's federal claims for inadequate medical treatment.").

By contrast, Defendant has located no authority suggesting that medical peer review documents are relevant to a plaintiff inmate's § 1983 deliberate indifference claims against individual medical providers. Nor are the peer review documents relevant to Plaintiff's state law claims against the Individual Medical Defendants. Given that these documents are of no value to Plaintiff's ability to establish her claims against the Individual Medical Defendants, Plaintiff's request for these documents is not proportional to the needs of this case unless and until she has established the liability of an Individual Medical Defendant. For the reasons set forth in Defendants' pending Motion to Bifurcate, Defendants request that the Court issue a protective order that they need not produce the documents they have withheld on the basis of a peer review privilege, at least until that juncture.

### C.     Deposition Testimony of the Individual Medical Defendants

Turning to Plaintiff's request that the Court re-open the depositions of Dr. Afre, Dr. El-Sayed, and the Nursing Defendants at Defendants' expense, they first note that Plaintiff has only provided the Court with an excerpt of the deposition of one of the six defendants she seeks to re-depose—Dr. Afre. During Dr. Afre's deposition, Plaintiff's Counsel attempted to question Dr. Afre about a Wexford morbidity and mortality conference concerning Decedent's death. Admittedly, Defense Counsel's instruction to Dr. Afre not to answer this line of questioning was on the basis of the peer review privilege. Accordingly, Dr. Afre and Wexford reassert the arguments raised above regarding the privileged nature of the morbidity and mortality conference and any testimony Dr. Afre might give about her involvement in that conference. Similarly, if the Court determines that Dr. Afre's testimony about the conference is not privileged, Dr. Afre and Wexford request that the Court re-open Dr. Afre's deposition for

11

questioning on this subject only after Plaintiff has established the liability of an individual Medical Defendant, consistent with Defendants' pending Motion to Bifurcate.

As to the other five defendants, Plaintiff's request should be denied first because Plaintiff has failed to even identify the line of questioning on which she contends these defendants improperly withheld testimony. And unlike Dr. Afre, these five defendants were permitted to and did answer questions about their knowledge of Wexford's investigation into Decedent's death. (Ex. 1, McNulty Dep. 47:5-48:16, 457:13-20; Ex. 2, Jamal Dep. 333:1-334:3, 369:19-370:1, 372:21-373:2; Ex. 3 Ohaneje Dep. 17:13-17, 190:2-9; Ex.4, Ajayi Dep. 153:19-154:10, 159:17-160:8, Ex. 5, El-Sayed Dep. 240:14-241:14, 360:15-361:6). Accordingly, none of these defendants withheld testimony on the basis of the peer review privilege. Indeed, aside from not disclosing the contents of her communications with defense counsel, Dr. El-Sayed answered every question Plaintiff's Counsel posed in her nearly six-and-a-half hour deposition, and Defendants cannot conceive of any basis upon which Plaintiff might seek to re-open her deposition, let alone at Defendants' cost.

The only line of questioning the Nursing Defendants were instructed not to answer on the basis of privilege concerned proceedings before the Maryland State Board of Nursing. (McNulty Dep. 11:6-25:21; Jamal Dep. 375:5-17; Ohaneje Dep. 31:33-34:11; Ajayi Dep. 159:17-162:13). This instruction, however, was asserted on the basis of a privilege distinct from the peer review privilege addressed in Plaintiff's Motion to Compel. The provision of the Maryland Code that creates the privilege for proceedings before the Board of Nursing provides:

> (a) Except by the express stipulation and consent of all parties to a proceeding before the Board or any of its investigatory bodies, in a civil action, the proceedings, records, and files of the Board or any of its investigatory bodies are not discoverable and are not admissible in evidence.

12

> (b) This section does not apply to a civil action brought by a party to a proceeding before the Board who claims to be aggrieved by the decision of the Board.

Md. Code. Ann., Health Occ. § 8-320.  This privilege was created by the Maryland General Assembly, and demonstrates Maryland's public policy that proceedings before the Board of Nursing are entitled to a broad privilege.  Indeed, the identical privilege attendant to proceedings before the Board of Physicians has been applied expansively by the Maryland Court of Appeals and the Fourth Circuit, which have held that information about Board proceedings is neither discoverable nor admissible in evidence for any purpose in a civil proceeding, even if the information has been made publicly available. *Pepsi Bottling Grp. v. Plummer*, 130 A.3d 1047 (Md. Ct. Spec. App. 2016); *Certain Underwriters at Lloyd's, London v. Cohen*, 785 F.3d 886 (4th Cir. 2015). Re-opening the Nursing Defendants' depositions to permit questioning on Board of Nursing Proceedings would undermine the express public policy of the State of Maryland.

Moreover, unlike Wexford's internal review of Decedent's death, which might be relevant to Plaintiff's *Monell* claim, the Board of Nursing's review of the Nursing Defendants' care of Decedent would not shed light on Wexford's policies, procedures, and customs. Moreover, the Board of Nursing's opinion on the individual Nursing Defendants' care of Decedent would not be relevant to whether those defendants are liable for § 1983 deliberate indifference, or under any of Plaintiff's state law theories of liability.  The inquiry conducted by the Board of Nursing in determining whether to impose disciplinary action against a licensee is distinct from issues relevant to medical negligence and deliberate indifference cases.  See e.g., Md. Code Ann., Health Occ. § 8-316 (listing acts for which the Board may impose disciplinary action on a licensee).  Accordingly, regardless of whether the Court is inclined to recognize the Board of Nursing proceedings as privileged, those proceedings are not relevant to either

Plaintiff's individual or *Monell* claim, and they are therefore not within the scope of discovery in this matter.

## CONCLUSION

For the reasons set forth above, Wexford and Dr. Afre respectfully request that the Court deny Plaintiff' Motion to Compel production of November 2012 Monthly Incident Review Report and the 2012 Mortality Log and to re-open the deposition of Dr. Afre—either permanently, because Wexford's investigation into Decedent's death is protected by the peer review privilege, or temporarily, because it is relevant only to Plaintiff's *Monell* Claim. Dr. El-Sayed and the Nursing Defendants respectfully request that the Court deny Plaintiff's Motion to Compel seeking to re-open their depositions because they did not withhold testimony under the peer review privilege and because the testimony withheld by the Nursing Defendants is privileged and not within the scope of discovery on any of Plaintiff's claims.

Respectfully Submitted,

 /s/ J. Michael Sloneker
J. Michael Sloneker (Bar no.: 03324)
Megan J. McGinnis (Bar no.: 12810)
Anderson, Coe & King, LLP
Seven Saint Paul Street, Suite 1600
Baltimore, MD  21202
(T) 410-752-1630/  (F) 410-752-0085
sloneker@acklaw.com/  mcginnis@acklaw.com
*Attorneys for Defendants Wexford Health Sources, Inc.; Elizabeth Obadina, RN; Andrea Wiggins, PA; Ebre Ohaneje, RN; Anike Ajayi, RN; Najma Jamal, RN; Karen McNulty, RN; Jocelyn El-Sayed, MD; Getachew Afre, MD; Obby Atta, CRNP*

<u>Certificate of Service</u>

I HEREBY CERTIFY that on this 19th day of January, 2017 a copy of the foregoing Defendant Wexford's Response in Opposition to Plaintiff's Motion to Compel Testimony and Documents was served via electronic mail and/or via first class mail to:

Fareed Nassor Hayat, Esquire
Masai D. McDougall, Esquire
Norrinda Hayat, Esquire
The People's Law Firm, LLC
14908 Notley Avenue
Silver Spring, MD  20905
Fareed.hayat@thepeopleslawfirm.net
Masai.mcdougall@thepeopleslawfirm.net
Norrinda.hayat@thepeopleslawfirm.net
*Attorneys for Plaintiffs*

Anand Swaminathan, Esquire
Theresa Kleinhaus, Esquire
Loevy and Loevy
312 N. May Street, Suite 100
Chicago, IL  60607
anand@loevy.com
tess@loevy.com
*Attorneys for Plaintiffs*

Michael Kanovitz, Esquire
Sarah Grady, Esquire
Steve Art, Esquire
Loevy and Loevy
311 N. Aberdeen  3rd Floor
Chicago, IL  60607
mike@loevy.com
sarah@loevy.com
steve@loevy.com
*Attorneys for Plaintiffs*

Laura Mullally, Esquire
Christopher A. Hinrichs, Esquire
Assistant Attorney General
Office of the Attorney General
300 East Joppa Road, Suite 1000
Towson, MD  21286
Laura.mullally@maryland.gov
*Attorneys for Defendants State of Maryland;*
*Baltimore City Detention Center*

Cierra Ladson
5324 Todd Avenue
Baltimore,  MD  21206
*Pro Se* Defendant
(VIA FIRST CLASS MAIL)

                                      /s/ J. Michael Sloneker
                                      J. Michael Sloneker (Bar no.: 03324)