**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| SHARON BOST, in her individual capacity and as personal representative of the ESTATE OF FATIMA NEAL, | * | |
| | * | |
| | | Case No. 1:15-cv-03278-ELH |
| *Plaintiff*, | * | |
| | | |
| *v.* | * | Hon. Ellen L Hollander |
| | | |
| WEXFORD HEALTH SOURCES, INC., *et al.*, | * | Hon. A. David Copperthite |
| | * | |
| *Defendants*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S REPLY IN SUPPORT OF HER
MOTION TO COMPEL BOARD OF NURSING DOCUMENTS**

Plaintiff SHARON BOST, in her personal capacity and as personal representative of the ESTATE OF FATIMA NEAL, by her attorneys, respectfully submits the following reply in support of her Motion to Compel Board of Nursing Documents (ECF No. 186).

**INTRODUCTION**

Plaintiff seeks the disclosure of investigative materials that are highly relevant to the death of Fatima Neal and to Plaintiff's claims against Defendants in this case. On June 8, 2017, Plaintiff issued a subpoena to the Maryland Board of Nursing requesting documents regarding the nurses who interacted with Ms. Neal during her final days. The Board objected to the subpoena with a claim of privilege, and on July 27, 2017, Plaintiff moved to compel production of each of the five categories of responsive materials identified by the Board. ECF No. 186.

In his Opposition to Plaintiff's Motion to Compel (ECF No. 187), the Custodian of Records for the Maryland Board of Nursing (the "Custodian") does not contest the relevance of

these materials. Instead, he asks this Court to reverse its own ruling of June 19, 2017, and craft a peer-review privilege with no basis in federal law. Relying on the overwhelming weight of authority across the country, this Court has already considered and rejected this exact claim of privilege in this very case. The Custodian provides no good reason to revisit that decision, and his Opposition should be rejected. Neither the Custodian's hyperbole about the consequences of disclosure nor his conclusory assertions about the insignificance of the materials in the Board of Nursing's possession is sufficient to justify the extraordinary relief that the Custodian seeks.

## ARGUMENT

The only issue raised in the Custodian's Opposition has already been litigated and decided in this case. Two months ago, this Court declined to recognize a federal peer-review privilege, citing the "overwhelming weight of authority" of federal courts rejecting such a privilege and noting the importance of the requested investigative documents to the Plaintiff's case. ECF No. 171. In refusing to create a federal peer-review privilege, the Court considered arguments made by Wexford that are identical to the ones the Custodian now raises: that the requested materials are unimportant and that the privilege is necessary to maintain the confidentiality of medical peer review. These arguments were insufficient to justify creating a new federal privilege the first time they were made, and they are equally unpersuasive the second time around. Because this issue has been already exhaustively argued by the parties and resolved by this Court, the Custodian's reiteration of the same arguments must be rejected as well.

In an effort to distinguish his request to create a federal peer-review privilege from Wexford's earlier request to create a federal peer-review privilege, the Custodian repeats Wexford's arguments and insists they are more convincing as applied to the Board of Nursing.

The Custodian claims that disclosure would produce disastrous consequences, and he asserts that the subpoenaed materials are unimportant to Plaintiff's case. Neither argument holds water.

## I.   The Allegedly Disastrous Consequences of Disclosure Are Dubious

The Custodian alleges that disclosure would make licensees "far less likely to cooperate with future Board investigations" in light of the "risk that the statement be subject to discovery in subsequent federal litigation." ECF No. 187-2. The consequence, he warns, would be diminished "effectiveness in resolving complaints and fostering the provision of competent and safe nursing care to the citizens of Maryland." *Id.* But this Court already has rejected this exact claim, correctly observing that the danger that federal discovery poses for future administrative investigations is "minimal." ECF No. 171. There is no reason to think that proper federal discovery of relevant information from the Board would have any impact on the Board's ability to perform administrative investigations. It strains credulity to think that nurses who are fully cooperative and truthful during an investigation by a state agency (which possesses the power to take away their licenses) would suddenly refuse to comply with that investigation because of a small chance their statements might be later discovered in subsequent federal litigation. On the contrary, one would expect professional nurses to be equally truthful and cooperative with both state administrative investigations and discovery authorized by a federal court.

But this Court need not rely on speculation to conclude that the Custodian's concerns are misplaced. As this Court has already observed, every federal Court of Appeals to consider whether a peer-review privilege should apply to entities like the Board of Nursing has declined to invent such a federal privilege. If the Custodian's doomsaying were correct, given the state of the law across the country, we would have seen a massive breakdown in the ability of state regulatory agencies to investigate nurses and other medical professionals. No such breakdown

has occurred anywhere. The Custodian provides no plausible basis for believing that the lack of a privilege would fundamentally undermine the Board's investigations.

## II.     The Records Possessed by the Board of Nursing Are Vital Evidence

Reiterating another of Wexford's arguments in favor of recognizing a new federal privilege, the Custodian alleges that failing to disclose the subpoenaed materials "will not seriously impede Plaintiff's ability to prevail, should the medical evidence support her case." ECF No. 187-2. This assertion betrays a misunderstanding of the claims at issue in this case, which require the Plaintiff to show "not only that Decedent was denied adequate medical care, but that Defendants were deliberately indifferent, meaning that they 'kn[e]w of and disregard[ed] an excessive risk to inmate health or safety." ECF No. 171 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)) (alterations in original). To that end, the Board's investigative materials are relevant and plainly discoverable because they contain contemporaneous party admissions from Defendants about their treatment of Ms. Neal. That reason alone would be enough to justify a response to the subpoena in this case, but the materials in the Board's possession are even more important given that Defendants nearly unanimously disclaim any recollection of their interactions with Ms. Neal. The subpoenaed materials therefore potentially contain the *only* statements from Defendants describing memories of Fatima Neal's treatment and death.

The Custodian's sole response is that Defendants' professed lack of memory is implausible, and so Plaintiff will be able to confront Defendants at trial with the implausibility of their professed lack of memory, without reference to the Board's records and recordings. Plaintiff agrees that Defendants' professed lack of memory is implausible, which is precisely why she expects that Defendants' statements to the Board will contain actual admissible statements. Moreover, information from Defendants contained in the Board's documents can be

4

used to refresh Defendants' recollections at trial. In addition, the Board's investigation will contain contemporaneous records of Defendants' statements that are reliable evidence of their conduct, which can be used as substantive evidence or for impeachment during cross-examination. This evidence is obviously different in kind than vague questioning on cross-examination about the implausibility of Defendants' lack of memory. The evidence is relevant, and there is no credible argument otherwise. The probative value of the subpoenaed materials was central to this Court's first refusal to craft a federal peer-review privilege, and the same claim of privilege should be rejected again here.

**CONCLUSION**

Because this Court has already decided in this case that no federal peer-review privilege exists and that relevant materials must be produced, Plaintiff respectfully requests that the Court grant her Motion to Compel.

RESPECTFULLY SUBMITTED,

/s/ Steven Art
Steven Art
*Counsel for Plaintiff*

Arthur Loevy
Michael Kanovitz
Anand Swaminathan
Steven Art
Sarah Grady
Tony Balkissoon
LOEVY & LOEVY
311 North Aberdeen St., 3rd Floor
Chicago, Illinois 60607
Phone No.: (312) 243-5900
Fax No.: (312) 243-5902
steve@loevy.com

Masai D. McDougall
Fareed Nassor Hayat
Norrinda Hayat
THE PEOPLE'S LAW FIRM
14908 Notley Avenue
Silver Spring, Maryland 20905
Phone No.: (301) 384-2198

## <u>CERTIFICATE OF SERVICE</u>

I, Steven Art, an attorney, hereby certify that, on August 15, 2017, I filed the foregoing

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO COMPEL

TESTIMONY AND DOCUMENTS using the Court's CM-ECF system, which effected service

on all counsel of record listed below.  I further certify that within one (1) business day of this

filing, I will cause the same to be served on Defendant Cierra Ladson at the address she provided

the Court (Doc. No. 60).

/s/ Steven Art
Steven Art
*Counsel for Plaintiff*

Laura Mullally
Beverly Hughes
OFFICE OF THE MARYLAND ATTORNEY GENERAL
300 East Joppa Rd., Ste. 1000
Towson, Maryland 21286
Phone No.: (410) 339-7339
Fax No.: (410) 339-4243

Michael Sloneker
Megan McGinnis
ANDERSON, COE & KING
7 Saint Paul St., Ste. 1600
Baltimore, Maryland 21202
Phone No.: (410) 752-1630
Fax. No.: (410) 752-0085