IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ESTATE OF FATIMA NEAL, et al      *

     Plaintiffs      *

v.      *    Case no.:  15-CV-03278-ELH

STATE OF MARYLAND, et al      *

     Defendants      *

* * * * * * * * * * *

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL INTERROGATORY RESPONSES FROM THE WEXFORD DEFENDANTS**

Defendants, Elizabeth Obadina, Andria Wiggins, Ebere Ohaneje, Anike Ajayi, Najma Jamal, Karen McNulty, Jocelyn El-Sayed, Getachew Afre, and Oby Atta (collectively the "Individual Medical Defendants"), by and through their attorneys, J. Michael Sloneker and Megan J. McGinnis, file this Response in Opposition to Plaintiff's Motion to Compel Interrogatory Responses from the Wexford Defendants (ECF No. 190), and state as follows:

**I.     Background**

Plaintiff Sharon Bost, in her individual capacity and as the personal representative of the estate of her daughter, Fatima Neal, alleges generally that Ms. Neal received deficient medical care between November 1, 2012 and November 4, 2012, while Ms. Neal was detained at the Women's Detention Center ("WDC") of the Baltimore City Detention Center ("BCDC"). (First Am. Compl., ECF No. 56). Ms. Neal was admitted to the WDC infirmary in the early morning hours of November 1 with complaints of a headache and feeling cold. Several days later, in the early morning hours of November 4, 2012, Ms. Neal died of an intracerebral hemorrhage with complications. (First Am. Compl. ¶¶ 63; 125-43). Plaintiff asserts that Ms. Neal suffered multiple strokes during the time she spent in the infirmary. (First Am. Compl. ¶ 2). She claims

that Wexford-employed medical staff either failed to recognize or deliberately ignored Ms.

Neal's strokes and repeatedly failed or refused to send Ms. Neal to a hospital for emergency care,

until it was too late. (First Am. Compl. ¶¶ 153-68). Plaintiff has asserted a claim for deprivation

of Eighth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983, a claim for violation

of Article 24 of the Maryland Declaration of Rights, and state law claims of medical malpractice,

wrongful death, and intentional infliction of emotional distress against both Wexford Health

Sources, Inc. ("Wexford), and the Individual Medical Defendants, as well as claims of

*respondeat superior* and for indemnification against Wexford for all torts committed by its

agents.

Plaintiff has repeatedly sought to paint Defendants conduct as "obstructionist" throughout

discovery in this case, *see* ECF Nos. 154, 167, 178, so to place this latest discovery dispute in

perspective, and to assist the Court in determining what, if any, supplemental responses are

proportional to the needs of this case, Defendants first provide a brief summary of the parties'

discovery efforts to-date. Discovery in this case has been ongoing for more than a year. As for

fact discovery, Plaintiff has deposed 25 fact witnesses (two of whom she deposed twice) for just

shy of 100 hours. Defendants deposed Plaintiff. Plaintiff has propounded multiple sets of

interrogatories and requests for production of documents on all Defendants, and Defendants

propounded interrogatories and requests for production of documents on Plaintiff. Wexford

Health Sources, Inc., and the Individual Medical Defendants have produced 5,668 pages of

documents, the Custody Defendants have produced 5,581 pages of documents, and Plaintiff has

produced 15,507 pages of documents.[1] And as for expert discovery, both parties have retained expert witnesses who prepared reports as required by Rule 26(a)(2)(B) and who have responded to subpoenas for discoverable materials pursuant to Rule 26(b)(4)(C). Over more than twenty hours, Plaintiff has deposed the four expert witnesses designated by Defendants (and this week she is scheduled to depose one of Defendants' experts a second time). Defendants have also deposed the three expert witnesses designated by Plaintiff. To say that discovery has been a tremendous expenditure of the time, energy, and resources of all parties is an understatement.[2]

## II.      Argument

Plaintiff now seeks an order compelling the Individual Medical Defendants to provide "fulsome" supplemental answers certain of the third set of interrogatories she served in her individual capacity.[3] Plaintiff suggests that, simply because contention interrogatories are permitted by the Federal Rules of Civil Procedure, all of her contention interrogatories are appropriate, and that Defendants must therefore provide responses in the format and containing the substantive information that she desires. Authority concerning the purpose, scope, and timing of contention interrogatories illustrates she is not entitled to the supplemental answers she seeks.

---

[1] Lest this numerical disparity give the impression that Defendants have not been as thorough as Plaintiff in their document productions, 12,000 pages of these documents were produced recently and were apparently obtained by Plaintiff in response to a public information act request for the contract between Wexford and the state of Maryland and for investigations related to any deaths in jail, prison, or other correctional setting in which Wexford was responsible for medical care. That is, they are either documents that Defendants had already produced to Plaintiff or documents that are unrelated to the care provided to Ms. Neal and the circumstances surrounding her death.

[2] Plaintiff has been less-than-diligent in her provision of the quarterly fee statements she is required to produce under the local rules, but as of May 1, 2017, her attorneys' fees totaled $622,235.25. (Ex. 1, Pl.'s Quarterly Fee Statements). A great deal of additional discovery has taken place in the four months since May 1, 2017, and Defendants expect that Plaintiff's attorneys' fees may now be in excess of $900,000.00.

[3] Plaintiff repeatedly requests "fulsome" supplemental answers to interrogatories. Fulsome is defined as: "1. offensively flattering or insincere. See Synonyms at unctuous. 2. Offensive to the taste or sensibilities. 3. *Usage Problem*. Copious or abundant." The American Heritage Dictionary of the English Language 734 (4th ed., 2006). Even if Plaintiff is not using fulsome in its traditional, disparaging sense, and instead intends it as a synonym for copious or abundant, it is clear that she seeks something more than the "full" answers to which she is entitled under Federal Rule of Civil Procedure 33(b)(3).

**A.      Plaintiff's Contention Interrogatories Are Not Necessary to Help Her Pin Down Defendants' Legal Theories or the Facts Supporting Them**

First, Plaintiff is not entitled to supplemental answers to her contention interrogatories because the supplemental answers she seeks would not legitimately further the purpose of contention interrogatories—apprising her of Defendants' legal theories and the primary facts supporting them. Plaintiff is already fully apprised of Defendants' legal theories and the primary facts supporting them, and for this reason alone, her Motion to Compel should be denied.

Plaintiff is apparently under the impression that the language of Federal Rule of Civil Procedure 33, which provides only that "an interrogatory is not objectionable *merely because* it asks for an opinion or contention that relates to fact or the application of law to fact" (emphasis added), means that all contention interrogatories are appropriate and must be answered in a "fulsome" manner, so long as they are propounded at the end of discovery, and that contention interrogatories may never be objected to.  Defendants do not dispute that "properly drafted, 'contention interrogatories,' . . . can help pin down an opponent's legal theories in a case as well as the primary facts supporting them." *Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173 F.R.D. 651, 652 (D. Md. 1997).  Yet as the United States District Court for the Middle District of North Carolina has cautioned:

> A court may be well advised to examine whether contention discovery is truly necessary in any particular case. . . . contention discovery often requires a party to, in essence, prepare a trial brief at an earlier time in the litigation process than normally occurs. Without some specific reason to require such an acceleration, the Court may well deem the burden to outweigh the benefit. In the ordinary case, the complaint, answer, disclosures, and discovery will provide sufficient information about a party's position until such time as the filing of the dispositive motions or trial briefs. In other cases, contention discovery may be necessary to avoid surprises at trial. Courts may wish to confine contention discovery to those cases where there is a compelling, specific need for the information prior to the filing of dispositive motions in order to keep litigation costs down.

*BB&T Corp. v. United States*, 233 F.R.D. 447, 450-51 (M.D.N.C. 2006) (internal citation

omitted). Here, Plaintiff's contention interrogatories are not objectionable "merely because" they

ask for opinions or contentions that relate to facts; they are objectionable for a host of other

reasons.

       The primary reason Plaintiff's contention interrogatories are objectionable is that they are

not actually necessary to help Plaintiff pin down Defendants' legal theories or the facts

supporting them. As Plaintiff's motion demonstrates, she is fully aware of Defendants' position

in this case: that Ms. Neal died of brain injuries, that Ms. Neal was not suffering strokes over the

course of multiple days, and that Defendants could not have helped Ms. Neal. (Pl.'s Mot. at 2).

Although this inartful language is not how Defendants would describe their position on any of

these three issues, it accurately captures the gist of their theory of the case. Moreover, this is a

case in which all parties plan to file motions for summary judgment (see ECF No. 191 at ¶ 3),

which should be more than sufficient to place all parties on notice of each other's legal theories

and the facts supporting them. Given the extensive discovery conducted to date, as well as the

impending motions for summary judgment and motions *in limine*, there is no risk that Plaintiff

will be surprised by the facts and legal theories Defendants introduce at trial. This is the very

reason Defendants have not filed a motion to compel with respect to their own contention

interrogatories, to which Plaintiff provided grossly unresponsive answers.[4]

---

[4] For example, each defendant asked Plaintiff to identify the particular acts or omissions committed by that
defendant that constituted a breach of the standard of care. In order to succeed on her medical negligence claim
against any particular defendant, she must establish that each particular defendant committed a breach of the
standard of care.  This is an example of an appropriate use of a contention interrogatory—it asks Plaintiff to identify
the facts she contends support a position that she *must* take by virtue of the claims she has asserted.

Rather than pinning down Defendants' legal theories and the facts supporting them, Plaintiff's motion indicates that the actual motivation behind her contention interrogatories is that she seeks to introduce Defendants' interrogatory answers as binding admissions by Defendants on issues at trial. Yet Plaintiff's suggestion that certain answers to her interrogatories might "substantially narrow the issues required to be resolved at trial," is simply not true. (Pl. Mot at 16-17). While interrogatory answers are admissible at trial to the extent allowed by the Federal Rules of Evidence, *see* Fed. R. Civ. P. 33(c), interrogatories are not requests for admission, and interrogatory answers are not binding admissions at trial. "As a general rule, an answer to an interrogatory does not conclusively bind the answering party in all instances." *Marcoin, Inc. v. Edwin K. Williams & Co., Inc.*, 605 F.2d 1325, 1328 (4th Cir. 1979); *see also Bradley v. Allstate Ins. Co.*, 620 F.3d 509, 527 n.21 (5th Cir. 2010) ("Although interrogatory responses are not binding judicial admissions . . ."). Indeed, parties are typically not barred from taking positions contrary to their interrogatory answers at trial. See 8B Fed. Prac. & Proc. Civ. § 2181 (3d ed.). Accordingly, narrowing the issues that will actually need to be resolved at trial is decidedly not the purpose of contention interrogatories.

### B.    Interrogatory Nos. 1 and 2

Turning to Plaintiff's interrogatory-specific arguments, Interrogatory Nos. 1 and 2 both attempt to force Defendants to take a position on sub-issues pertaining to the timeline of Ms. Neal's intracerebral hemorrhage and secondary infarcts:

---

Yet for each defendant, Plaintiff filed an identical answer which identified, as an example of an act or omission that each defendant committed that breached the standard of care, the fact that the defendant had prescribed Motrin and Tylenol with Codeine for Ms. Neal's headache. (*See, e.g.*, Ex. 2, Pl's Supp. Ans. to McNulty Interrogs, at No. 1). As for all but one defendant, this answer is ridiculous. It is most ridiculous with respect to the five nurses, since nurses *cannot* prescribe medication. Plaintiff cannot point to any evidence indicating that they can or that they did so in this case, and none of her experts has opined otherwise. In this instance there is only evidence that one physician, Dr. Afre, prescribed narcotic pain medicine to Ms. Neal while she was in the WDC infirmary. Plaintiff cannot point to any contradictory evidence and none of her experts has opined otherwise. Identifying this as an act or omission committed by anyone other than Dr. Afre is unsupportable.

**INTERROGATORY NO. 1.** Is it your position that Fatima Neal did not suffer a stroke at the Baltimore City Detention Center at any time prior to noon on November 3, 2012? If so, please describe in detail all evidence that you will use at trial to show that Fatima Neal suffered her first stroke at the Baltimore City Detention Center after noon on November 3, 2012.

**ANSWER:** Defendant objects to this Interrogatory to the extent that it seeks to shift the burden of proof with respect to causation. Defendant further objects to this interrogatory to the extent that identifying the evidence Defendant intends to introduce on a specific issue calls for defense counsel's mental impressions, thought processes, and trial strategy, which are protected from disclosure by . . . the work product doctrine, and which goes far beyond the disclosure contemplated by Federal Rule of Civil Procedure 26(a)(3). Defendant will disclose the evidence [he or she] intends to introduce at trial in accordance with Rule 26(a)(3). Without waiving this objection, Defendant adopts and incorporates [his or her] Rule 26(a)(2) Disclosure and the accompanying Reports of, as well as the deposition testimony by, Brent Harris, MD, Joel Winer, MD, Thomas Fowlkes, M.D. and David Mathis, M.D., as well as any subsequent supplements to those reports. See also Defendant's Answer to Interrogatory No. 2, herein.

**INTERROGATORY NO. 2.** In your view, what was the first symptom of stroke that Fatima Neal suffered while at the Baltimore City Detention Center and at what time and date did she first exhibit that symptom? Please describe in detail all evidence that supports your view.

**ANSWER:** Defendant objects to this Interrogatory to the extent that it seeks to shift the burden of proof on medical negligence and deliberate indifference, and on the grounds that it is vague and ambiguous, insofar as it fails to define "symptom of stroke." Specifically, the point when Fatima Neal first suffered a symptom of a stroke may not be the same as the point when she first outwardly exhibited a symptom of a stroke, the point when she exhibited stroke symptoms sufficient for a physician to determine that she was suffering from a serious (but perhaps undiagnosed) medical condition, or the point when she exhibited stroke symptoms sufficient for a physician to diagnose her with a stroke. It is unclear which, if any, of these points in time is responsive to this Interrogatory. Additionally, to the extent that this Defendant may not have been present at the BCDC, or may not have been observing Ms. Neal at the precise moment when she first suffered a stroke symptom, Defendant may be without personal knowledge sufficient to answer this Interrogatory. Without waiving these objections, Defendant adopts and incorporates [his or her] Rule 26(a)(2) Disclosure and the accompanying Reports of Thomas Fowlkes, MD, David Mathis, MD, Joel Winer, MD, and Brent Harris, MD, as well as any subsequent supplements to those Reports.

Defendants have produced expert reports detailing their position regarding the timeline of

Ms. Neal's intracerebral hemorrhage and secondary infarcts, which necessarily encompasses the

period of time during which she might have exhibited "symptoms" of the intracerebral hemorrhage and secondary infarcts. Those experts then sat for lengthy depositions while Plaintiff's counsel probed the basis of those opinions.[5] Accordingly, Plaintiff is well aware of Defendants' position on the issue of the timing of Ms. Neal's intracrerebral hemorrhage and secondary infarcts, as well as all of the facts underlying Defendants' position. To the extent that Plaintiff's interrogatory may have sought to determine whether Defendants would rely on anything other than expert testimony in support of their position, Defendants did not refuse to answer on this ground. However, for Defendants to amend their responses to these interrogatories would be a waste of the parties' time and resources.

### 1.    Defendants' Objections are Appropriate

Plaintiff disputes the propriety of Defendants' objections to Interrogatory Nos. 1 and 2, to the extent they shift to seek the burden of proof and to the extent that they call for defense counsel's mental impressions, thought processes, and trial strategy, which are protected from disclosure by the work product doctrine. Plaintiff first suggests that an attorney can never assert a work product objection in response to a contention interrogatory. Yet the authorities she has cited stand simply for the proposition that the work product doctrine does not apply to prevent an attorney from identifying factual information in response to an interrogatory. *See also, Okla. v. Tyson's Foods, Inc.*, 262 F.R.D. 617, 629 (N.D. Okla. 2009) ("Neither can a party refuse to respond to an interrogatory requesting factual information because that information is known only to its attorney."); *King v. E.F. Hutton & Co.*, 117 F.R.D. 2, 5 n.3 (D.D.C. 1987) ("in

---

[5] Since answering Plaintiff's interrogatories, Defendants have notified Plaintiff that Brent Harris, M.D. is no longer an expert they may use to introduce testimony at trial, and they have further represented to Plaintiff that they will not use the opinions expressed in his report and during his deposition on summary judgment briefing. (Ex. 3, McGinnis Email, Aug. 25, 2017). Despite this change, Defendants' position on the issue of the timing of Ms. Neal's intracrerebral hemorrhage remains based on the expert reports and testimony of Joel Winer, M.D., who is scheduled to sit for a deposition on his recently disclosed supplemental report on August 31, and Plaintiffs continue to have ample opportunity to probe the basis of his opinions.

answering contention interrogatories the party is only giving the factual specifics which the party contends supports a claim, and this in no way impinges on the attorney's impressions or analysis as to how the attorney will endeavor to apply the law to the facts."). And, more importantly, this objection is plainly permissible under this Court's precedent, which states that "on one hand, a party's legal theories or contentions are discoverable to the extent that they relate to the application of law to fact, *and do not violate the attorney work product doctrine*." *EEOC v. Freeman*, 288 F.R.D. 92, 102 (D. Md. 2012) (emphasis added).

Interrogatory Nos. 1 and 2 are objectionable not because they seek the identification of facts supporting Defendants' claims, but because they seek counsel's mental impressions, thought processes, and trial strategy. They ask Defendants to identify their position on discreet sub-issues related to the timing of Ms. Neal's intracerebral hemorrhage and secondary infarcts and symptoms she may have suffered. Defendants do not bear the burden of proving when Ms. Neal's intracerebral hemorrhage and secondary infarcts occurred or when she experienced and exhibited certain symptoms. Plaintiff is already aware of Defendants' theory on the timeline of Ms. Neal's intracerebral hemorrhage and secondary infarcts and the facts supporting that theory, but additional information about precisely how Defendants will introduce these facts at trial delves into counsel's ultimate trial strategy. These interrogatories therefore go beyond what is contemplated by caselaw discussing the appropriate scope of contention interrogatories, and much of the information they seek falls squarely in the realm of attorney work product.

In responding to Plaintiff's contention interrogatories, Defendants identified facts in support of the positions they have actually taken with respect to the timing of Ms. Neal's intracerebral hemorrhage and secondary infarcts, i.e., the opinions of their experts, but they declined to delve into their trial strategy to explain whether and why they may or may not take a

position on these sub-issues and, if they do so, what that position may be. By raising work product objections Defendants declined to disclose counsel's mental impressions, thought processes, and trial strategy, separate and apart from identifying the facts supporting claims they have made or must make. *See e.g., Maharaj v. Geico Casualty Insurance Company*, No. 12-80582-Marra/Matthewman, 2013 WL 12084486, at *2 (S.D. Fla. Jan. 7, 2013) (requiring a defendant to identify facts in support of positions it had already asserted in its answer to the plaintiff's complaint).

As for Defendants' objections that these interrogatories seek to shift the burden of proof with respect to causation, Plaintiff's argument that this objection does not justify withholding responsive information misses the point. Defendants raised this objection not as a basis for withholding information, but in order to preserve the objection so that, when Plaintiff attempts to introduce their answers at trial to suggest that Defendants have made concessions or admissions about certain issues on which she bears the burden of proof, Defendants will not be deemed to have waived these objections. Ruling on this objection is therefore premature. Defendants will nevertheless address the propriety of this objection, because it is related to their argument that Plaintiff cannot dictate the form of their responsive answers.

The purpose of contention interrogatories has been described, in part, as: "to enable the propounding party to determine the proof required to rebut the respondent's position." *Oklahoma v. Tyson's Foods, Inc.*, 262 F.R.D. 617, 629 (N.D. Okla. 2009) (quoting *Steil v. Humana Kansas City, Inc.*, 197 F.R.D. 445, 447 (D. Kan. 2000)). This definition assumes that the party propounding the contention interrogatory will ultimately be in a position of rebutting something that the responding party has alleged, and therefore that the responding party bears the burden of proof on the issue to which the allegation pertains. When confronted with the propriety of a

similar burden of proof objection in the context of a contention interrogatory, the Eastern District

of New York explained:

> Although the defendant has provided no direct support for the proposition that
> contention interrogatories may only be directed at issues on which the responding
> party bears the burden of proof, the authorities they have submitted—and the
> additional authorities reviewed by the court—almost universally involve
> interrogatories in which the responding party is asked to provide facts and
> evidence supporting contentions advanced by the party in its pleadings. . . . Thus,
> although the court does not accept the proposition that contention interrogatories
> may only explore a party's "contentions" concerning issues on which the party
> bears the burden of proof, in ruling on various interrogatory responses below, the
> supplementation that the court requires seeks to address the defendant's concerns.

*Linde v. Arab Bank, PLC*, No. CV-04-2799(NG)(VVP), 2012 WL 597970, at *2 (E.D.N.Y. Mar.

21, 2012). In determining whether to require Defendants to supplement their answers to

Plaintiff's interrogatories, Defendants respectfully request that the Court likewise take into

account their concern over being forced to take positions on issues on which they have not

previously taken a position and on which they might not otherwise take a position.

      Additionally, the authorities Plaintiff cites for the proposition that Defendants' objection

is invalid are not remotely compelling. In the first case, the defendant sought to compel

responses to contention interrogatories from the plaintiff and argued that if the court did not

require the plaintiff to respond, that ruling would *effectively* shift the burden of proof to the

defendant. *In re: Riddell Concussion Reduction Litigation*, No. 13-7585 (JBS/JS), 2016 WL

7365508, at *1 (D.N.J. Jan. 6, 2016). This is entirely unrelated to whether a contention

interrogatory is objectionable because it attempts to force a party to take a position on an issue

on which it does not bear the burden of proof. Notably, moreover, the court in *Riddell* declined to

compel the plaintiff to answer defendant's contention interrogatories precisely because "an

extensive record already exist[ed] of plaintiff's contentions." *Id.* at *3. As discussed above, an

extensive record of Defendants' legal theories and the facts supporting them are already

available to Plaintiff. And in the second case to which Plaintiff cites, the court made passing mention of the plaintiff's argument that the defendant's burden of proof objection was improper, but the court did not make any ruling with respect to the propriety of the objection or, for that matter, even discuss it. *Maharaj*, 2013 WL 12084486, at *2.

Here, Plaintiff's contention interrogatories go far beyond seeking factual information in support of positions Defendants have taken on an issue, or on positions that they must take by virtue of the fact that they bear the burden of proof on an issue. Instead they attempt to force Defendants to take a position on sub-issues of major issues on which Plaintiff plainly bears the burden of proof. Because Defendants do not yet know how Plaintiff will actually attempt to satisfy her own burden of proof on these issues, it is nearly impossible to predict these nuanced aspects of the positions Defendants will take to rebut Plaintiff's case.

Finally, the Court need not be concerned that acknowledging the validity of Defendants' objection here might mean that defendants in civil cases might never have to answer discovery. There is a distinct and important difference between a contention interrogatory that asks a party to identify facts in support of a position that it has taken, or in support of a position that it must take by virtue of the claims or defenses it has asserted, and one that requires a party to make a contention about an issue on which it has not previously taken a position and on which it will not necessarily be required to take a position as a result of its claims or defenses.

### 2. Plaintiff Cannot Dictate the Form of Defendants' Answer to Interrogatory No. 1

Plaintiff objects to Defendants' answers to Interrogatory No. 1 because she contends that the only "appropriate" response to this question is in the form of a yes or a no. She cites no authority for the proposition that she can dictate the form of Defendants' answers. As noted above, Defendants have taken a position on the timing of Ms. Neal's intracerebral hemorrhage

and secondary infarcts in their defense of this matter. Plaintiff is well aware of that position and its basis—the opinions of Defendants' experts. Defendants' answers directed Plaintiff to the reports and testimony of their experts and made clear that they will not point to evidence other than their experts' opinions on this issue. Accordingly, Defendants' answer is responsive to the question Plaintiff posed, even if it is not in the form Plaintiff would prefer. Defendants respectfully request that the Court decline to allow Ms. Neal to use this interrogatory as a pseudo request for admission.

### 3.    Interrogatory No. 2 Cannot Be Answered As Posed

As for the vagueness and ambiguity of Interrogatory No. 2, Plaintiff suggests that Defendants should be able to identify the very first "symptom of stroke" Ms. Neal suffered as well as the precise moment at which she "exhibited" or outwardly displayed it. But Plaintiff's own argument demonstrates precisely why Interrogatory No. 2 is unanswerable as posed.  In an attempt to demonstrate the lack of ambiguity of this interrogatory, Plaintiff provides her own contention with respect to the question it poses, stating that it is her position "that Ms. Neal began exhibiting symptoms (headache, one-sided weakness, blindness, etc.) at the time or very shortly after she was admitted to the BCDC infirmary." (Pl.'s Mot. at 8-9). Not only does Plaintiff's contention not identify a particular "first symptom" but it also does not identify the time at which any such "first symptom" was "exhibited." Instead, she provides an open-ended list of possible first symptoms and a window of time during which she contends Ms. Neal first began exhibiting symptoms.

Plaintiff's own argument also demonstrates the validity of Defendants' burden of proof objection. She states: "*To the extent Defendants have a position* that they will present at summary judgment or a trial about what symptom of stroke Ms. Neal first suffered and when she first outwardly exhibited that symptom, Plaintiff is entitled to have Defendants' sworn position

in writing before the trial starts." (Pl.'s Mot. at 11). But Plaintiff's interrogatory does not ask *whether* Defendants have a position on this issue and, if so, what that position is. Instead, it attempts to force them to take a position on this issue, regardless of whether they actually have a position on this issue at present, and despite the fact that nothing about their asserted defenses will require them to take a position on this issue at trial. As framed, Interrogatory No. 2 assumes that it is possible to pinpoint precisely the first symptom of stroke that Ms. Neal suffered and exactly when it occurred. Additionally, it assumes that Defendants have a specific contention regarding "the first symptom of stroke that Fatima Neal suffered," and the precise time at which she suffered it. Plaintiff cannot force Defendants to identify the facts in support of a contention that they have not actually asserted, based on assumptions with which they do not agree.

### C.      Interrogatory No. 4 Is Unreasonably Cumulative and Duplicative and Has Been Answered Fully

Interrogatory No. 4 asks whether each defendant performed a differential diagnosis in his or her treatment of Ms. Neal and, if so, what it entailed. Their answers are set forth separately below because, contrary to Plaintiff's assertion, they are not "substantially identical."

> **INTERROGATORY NO. 4.** At any time between October 31, 2012, and November 4, 2012, did you perform a differential diagnosis on Fatima Neal?  If you did, please describe in detail all evidence that you performed a differential diagnosis, including but not limited to the conditions that you considered and the results of your diagnosis.  If you did not, please describe why you did not perform a differential diagnosis.

> **DR. AFRE'S ANSWER:**  Defendant objects to this interrogatory on the ground that it is unreasonably cumulative and duplicative, as Plaintiff's counsel asked many questions of Defendant at [his] deposition on this very subject.  Without waiving that objection, based on a review of his treatment notes, Fatima Neal was admitted to the infirmary for observation of her complaint of severe headache. Headaches are common complaints and are caused by numerous, predominantly benign conditions.  Since her history and examination findings did not disclose a specific cause for her headache, the working diagnosis as documented in the contemporaneous medical records was "Headache, NOS."  Prior to 3:22 a.m. on November 4, there is no complaint by Fatima Neal documented in the medical records of any sign or symptom suspicious for a serious medical condition and the

examination findings likewise did not disclose any findings that were suspicious for a serious medical condition. The plan was to keep Ms. Neal in the infirmary and follow her complaint with ongoing assessments to determine if she developed signs or symptoms that would help the physicians to reach a more specific diagnosis of her complaint.

**DR. EL-SAYED'S ANSWER:** Defendant objects to this interrogatory on the ground that it is unreasonably cumulative and duplicative, as Plaintiff's counsel asked many questions of Defendant at her deposition on this very subject. Without waiving that objection, based on a review of Defendant's treatment note, Fatima Neal was admitted to the infirmary for observation of her complaint of severe headache. Headaches are common complaints and are caused by numerous, predominantly benign conditions. Since her history and examination findings did not disclose a specific cause for her headache, the working diagnosis as documented in the prior medical records was "Headache, NOS." Prior to 3:22 a.m. on November 4, there is no complaint by Fatima Neal documented in the medical records of any sign or symptom suspicious for a serious medical condition and the examination findings likewise did not disclose any findings that were suspicious for a serious medical condition. When Defendant encountered Ms. Neal, she was not currently complaining of a headache, and denied lightheadedness and nausea. She was able to communicate with Defendant, and Defendant's examination of her was fairly normal. Accordingly Defendant ruled out a number of potential causes of Ms. Neal's headache, including migraine, infection, and stroke. The plan was to keep Ms. Neal in the infirmary and follow her complaint with ongoing assessments to determine if she developed signs or symptoms that would help the physicians to reach a more specific diagnosis of her complaint.

**PA WIGGINS' ANSWER:** Defendant objects to this interrogatory on the ground that it is unreasonably cumulative and duplicative, as Plaintiff's counsel asked many questions of Defendant at his/her deposition on this very subject. Without waiving that objection, based on a review of her treatment note and her routine practice of performing differential diagnoses, this Defendant admitted Ms. Neal to the infirmary for observation of her complaint of headache. Headaches are common complaints and are caused by numerous, predominantly benign conditions. Since her history and examination findings did not disclose a specific cause for her headache, the working diagnosis, as documented on admission, was "Headache, Symptomatic." Prior to 3:22 a.m. on November 4, there is no complaint by Fatima Neal documented in the medical records of any sign or symptom suspicious for a serious medical condition and the examination findings likewise did not disclose any findings that were suspicious for a serious medical condition. The plan was to keep Ms. Neal in the infirmary and follow her complaint with ongoing assessments to determine if she developed signs or symptoms that would help the physicians to reach a more specific diagnosis of her complaint.

Plaintiff claims that Dr. Afre, Dr. El-Sayed, and PA Wiggins' answers to Interrogatory No. 4 are insufficient because they are not in the form of a "yes" or "no," but she once again cites no authority for the proposition that she can dictate the form of Defendants' answers, which are responsive. Ultimately, her request that the Court order Defendants to amend their answers to include a "yes," is wholly unnecessary precisely because she already elicited a "yes" in response to this question from these defendants at their depositions, which is precisely why they objected to this interrogatory as unreasonably cumulative and duplicative. For example, Dr. Afre testified as follows:

> Q.  And did you engage in conducting that differential diagnosis—
> A.  **Yes**.
> Q.  –when you encountered Ms. Neal on November 1st, 2012
> A.  **Yes**. In my mind, **yes**.

(Ex. 4, Afre Dep. Excerpt 271:4-9). Likewise, Dr. El-Sayed stated:

> Q.  Okay. When you saw Fatima Neal on that day, did you perform a differential diagnosis?
> A.  For her headache, because of her presentation I—you do form a differential diagnosis based on my exam and – **yes**, but because her exam to me was normal, then the differential diagnosis sort of shrinks down to normal.
> . . .
> Q.  So in the case of Fatima Neal on November 3rd, did you perform a differential diagnosis.
> A.  **Yes**.

(Ex. 5, El-Sayed Dep. Excerpt 173:13-174:2, 177:13-15). And although PA Wiggins was not asked point-blank whether she performed a differential diagnosis for Ms. Neal (she was instead asked what her differential diagnosis entailed and whether she had an independent recollection of performing it), her testimony makes plain that it is her answer to the question whether she performed one is yes:

> Q.  But what was the – what was the differential diagnosis that you completed?
> A.  The differential diagnosis was not completed. It's non-specific headache.
> . . .

> Q.  You don't have any independent recollection of whether or not you performed any differential diagnosis of Fatima Neal on November 1, 2012; correct?
> A.  It's part of my practice to do differential in my assessment.

(Ex. 6, Wiggins Dep. Excerpt 268:9-12, 271:3-8). Plaintiff elicited deposition testimony from each of these not only regarding the fact that they performed differential diagnoses, but also with respect to what their differential diagnoses entailed. (Exs. 4, 5, 6). Accordingly, Plaintiff's interrogatory asks questions that are in no way meaningfully different from the multiple questions counsel asked during Dr. Afre, Dr. El-Sayed, and PA Wiggins' depositions, and so the cumulative and duplicative nature of this interrogatory is plainly unreasonable and objectionable.

Moreover, not only did Plaintiff receive fully responsive testimony to the questions asked by Interrogatory No. 4 in response to counsel's questioning of Dr. Afre, Dr. El-Sayed, and PA Wiggins during their depositions, but also, in their answers to this interrogatory, Dr. Afre, Dr. El-Sayed, and PA Wiggins provided additional factual information about their respective differential diagnoses and identified specific aspects of their respective treatment notes that indicate what their working diagnoses were at the times they treated Ms. Neal.  This is precisely what is contemplated by a contention interrogatory, and Defendants' deposition testimony and interrogatory answers are unquestionably responsive. Plaintiff's Motion to Compel a supplemental answer to Interrogatory No. 4 should be denied.

Plaintiff also contends that "the fact that Defendants Ajayi, Ohaneje, Obadina, Atta, Jamal, and McNulty . . . provided a responsive answer to the interrogatory despite the fact that they, too, were questioned about differential diagnoses at their depositions shows that the interrogatory is not unreasonably cumulative." (Pl.'s Mot. at 13-14). Plaintiff conveniently omits citations to the portions of the deposition transcripts where she contends that this questioning took place. However, a review of the deposition transcripts of those six defendants indicates that, in fact, only Nurse McNulty was asked whether she performed a differential diagnosis, to which

she simply answered "no, not that I recall." (Ex. 7, McNulty Dep. Excerpt 327:7-11). While

cumulative, repeating her very brief answer in response to Interrogatory No. 4 was not

unreasonable, and Nurse McNulty accordingly did not object on this ground. Nurses Ajayi,

Obadina, Ohaneje, and Jamal and Nurse Practitioner Atta were not asked in their depositions

whether they performed a differential diagnosis or, if so, what it entailed, which is precisely why

counsel did not object to this interrogatory on that basis for those defendants.

### D. Defendants' Answer to Interrogatory No. 5 Fully Apprises Plaintiff of Defendants' Impeachment Strategy for Detainee Witnesses and Need Not Be Supplemented

Interrogatory No. 5 seeks Defendants' impeachment strategy with respect to the former

detainee witnesses Plaintiff intends to call at trial:

> **INTERROGATORY NO. 5.** Do you contend that any former detainee of the
> Baltimore City Detention Center who has been disclosed as a witness in this case
> has provided untruthful or inaccurate testimony in this case (whether by affidavit
> or deposition)?  If so, please explain what testimony is untruthful or inaccurate
> and describe in detail all of the evidence supporting your positions.

> **ANSWER:** Defendant objects to this interrogatory to the extent that identifying
> defense counsel's cross examination strategy of former detainee witnesses calls
> for defense counsel's mental impressions, thought processes, and trial strategy,
> which are protected from disclosure by the work product doctrine and attorney
> client privilege.  Defendant will disclose the evidence she intends to introduce at
> trial in accordance with Rule 26(a)(3).  However, without waiving this objection,
> Defendant contends that the statements of several detainee witnesses are
> inconsistent with the information recorded in the contemporaneous medical
> records prepared by multiple, different healthcare providers.  The detainee
> statements are also inconsistent, in some instances, with the history and
> statements made by Fatima Neal, as documented in the contemporaneous medical
> records. Moreover, prior to November 4, 2012, there are no complaints by
> detainees concerning Fatima Neal's condition in the infirmary or the medical care
> provided to her documented by any of the correctional staff who were present 24
> hours a day in the security office adjacent to the infirmary and who accompanied
> medical staff on each occasion they entered the infirmary.  In addition, the
> statements of the detainees are inconsistent with the findings of the autopsy
> performed by the Maryland Medical Examiner's Office.  Finally, Natalie Saracino
> has provided untruthful and inaccurate testimony in her sworn affidavit and in her
> deposition, which a review of her deposition testimony will readily disclose.

In objecting to this answer, Plaintiff overestimates the power of the contention interrogatory. Defendants' answers are, once again, unquestionably responsive. They describe Defendants' contentions regarding untruthful and inaccurate detainee testimony: that they contend that certain detainee testimony is inconsistent with certain evidence, and the evidence that they contend illustrates these inconsistencies: information recorded in contemporaneous medical records and in the autopsy report, history and statements made by Ms. Neal, and the absence of detainee complaints documented by correctional staff. Contention interrogatories are not tools that allow a party to obtain a list of every fact and piece of evidence that a party may wish to offer concerning a given issue at trial. *Linde* 2012 WL 597970, at *1. The description provided by Defendants is sufficiently detailed to apprise Plaintiff of the nature of proof that will be offered to rebut detainee testimony that has been disclosed, such that Plaintiff understands the theory of Defendants' defense regarding these statements and how Defendants' intend to prove that theory. *See Linde*, 2012 WL 597970, at *3.

Moreover, Plaintiff's request that the Court compel a supplemental answer to this interrogatory, once again, does not legitimately serve the purpose of pinning down Defendants' legal theories or the facts supporting them. Defendants experts all offered testimony at length concerning why they found statements of detainee witnesses inconsistent with the information contained in the contemporaneous medical records and the autopsy report, and with history and statements made by Ms. Neal. Those experts sat for lengthy depositions while counsel probed all aspects of those opinions. Accordingly, Plaintiff is well aware of the facts underlying Defendants' position on this issue. *See BB&T Corp. v. United States*, 233 F.R.D. 447, 450 (M.D.N.C. 2006) (suggesting that the need for contention interrogatories is often mooted by expert discovery); *see also Sigman*, 2016 WL 7444947, at *2 (same). To the extent that

19

Plaintiff's interrogatory may have sought to determine whether Defendants would rely on anything other than previously disclosed fact and expert testimony in support of their position on detainee statements, Defendants did not refuse to answer on this ground. However, fact and expert discovery now have provided sufficient information about Defendants' position on this issue.

### E.   Defendants' Answer to Interrogatory No. 7 is Fully Responsive and Need Not Be Supplemented

Finally, Interrogatory No. 7 attempts to elicit an admission from Defendants that they did not provide treatment to Ms. Neal for stroke prior to noon on November 3, 2012:

> **INTERROGATORY NO. 7.** Do you contend that you provided any treatment to Fatima Neal for stroke prior to noon on November 3, 2012? If your answer to this question is anything other than an unqualified "no," please describe in detail all evidence that you provided such treatment.

> **ANSWER:** Defendant objects to this Interrogatory to the extent that it seeks to shift the burden of proof with respect to the standard of care. Without waiving this objection, and based upon a review of [his or her] treatment notes, prior to noon on November 3, 2012, Defendant did not know or suspect that Fatima Neal was suffering from a stroke, and so there was no basis to treat her for a stroke. Based on Defendant's observations, Defendant provided Fatima Neal with treatment consistent with the standard of care, and in support, Defendant adopts and incorporates her Rule 26(a)(2) Disclosure and the accompanying Reports of Thomas Fowlkes, MD, David Mathis, MD, Joel Winer, MD, and Brent Harris, MD as well as any subsequent supplements to those Reports. Pursuant to Federal Rule of Civil Procedure 33(d), Defendant also adopts and incorporates Wexford's Response to Request for Production of Documents, Exhibit 1, which is a complete copy of Fatima Neal's DPSCS medical records.

Once again, Plaintiff states that Defendants' answers are insufficient because they do not include a simple yes or no answer, but Plaintiff has cited no authority for the proposition that she can dictate the form of Defendants' answers to her interrogatories. Defendants' answers are responsive. Plaintiff's motion makes clear that she understands Defendants' answers indicates that they did not provide her with treatment for stroke before noon on November 3, 2012. As discussed above, answers to interrogatories are not binding admissions at trial, and Plaintiff's

suggestion that an answer that actually said "no," instead of one that implies "no," would eliminate an issue at trial is incorrect.

Plaintiff has framed Interrogatory No. 7 in a manner that implies that Defendants should have provided Ms. Neal with treatment for stroke prior to noon on November 3, 2012. Defendants' position is that there was no medical indication to treat Ms. Neal for stroke prior to noon on November 3, 2012. Their answers make their position clear, while also providing a responsive answer to the question posed. Defendants did not answer the question with a "simple no," as Plaintiff suggests they should, because Defendants are unwilling to make a contention that implies that they should have treated Ms. Neal for stroke prior to noon on November 3, 2012. If Defendants answered this question with a "simple no," Plaintiff might then attempt to use Defendants' answers as evidence that Defendants should have provided Fatima Neal with treatment for stroke prior to noon on November 3, 2012.

Ultimately, after extensive expert discovery, Plaintiff is quite aware of Defendants' theory of the case regarding both standard of care and causation. And after approximately six hours of deposition testimony each, Plaintiff has sufficiently probed each defendant's position on the care he or she provided to Ms. Neal and the reason why that care was provided.  Perhaps Plaintiff's interrogatory sought to determine whether Defendants were abandoning the clearly expressed opinions of their experts regarding the sufficiency of their care and the timing of Ms. Neal's intracerebral hemorrhage and secondary infarcts, and whether Defendants would instead contend that they did provide her with treatment for a stroke (despite the patent inconsistency of such a contention with their deposition testimony). However, it is clear from Defendants answers that "there was no basis to treat her for a stroke," that they will not be making such a contention.

Plaintiff can therefore rest assured that Defendants' position on this issue will not surprise her at trial.

## III.  CONCLUSION

As set forth above, the pleadings and fact and expert discovery have provided sufficient information about Defendants' position on the issues in this case. Further, Defendants provided sufficiently responsive answers to Plaintiff's contention interrogatories to apprise her of Defendants' legal theories and the primary facts supporting them. Supplemental answers are not necessary to avoid surprises at trial, and Defendants respectfully request that the Court deny Plaintiff's Motion to Compel.

Respectfully Submitted,


_/s/ J. Michael Sloneker_____
J. Michael Sloneker (Bar no.: 03324)
Megan J. McGinnis (Bar no.: 12810)
Anderson, Coe & King, LLP
Seven Saint Paul Street, Suite 1600
Baltimore, MD  21202
(T) 410-752-1630/  (F) 410-752-0085
sloneker@acklaw.com/  mcginnis@acklaw.com
*Attorneys for Defendants Wexford Health Sources,*
*Inc.; Elizabeth Obadina, RN; Andria Wiggins, PA;*
*Ebere Ohaneje, RN; Anike Ajayi, RN; Najma Jamal,*
*RN; Karen McNulty, RN; Jocelyn El-Sayed, MD;*
*Getachew Afre, MD; Oby Atta, CRNP*

<u>Certificate of Service</u>

I HEREBY CERTIFY that on this 29th day of August, 2017 a copy of the foregoing Defendants' Response in Opposition to Plaintiff's Motion to Compel Interrogatory Responses from the Wexford Defendants was served via electronic mail and/or via first class mail to:

Fareed Nassor Hayat, Esquire
Masai D. McDougall, Esquire
Norrinda Hayat, Esquire
The People's Law Firm, LLC
14908 Notley Avenue
Silver Spring, MD  20905
Fareed.hayat@thepeopleslawfirm.net
Masai.mcdougall@thepeopleslawfirm.net
Norrinda.hayat@thepeopleslawfirm.net
*Attorneys for Plaintiffs*

Laura Mullally, Esquire
Beverly Hughes, Esquire
Assistant Attorney General
Office of the Attorney General
300 East Joppa Road, Suite 1000
Towson, MD  21286
Laura.mullally@maryland.gov
Beverly.hughes@maryland.gov
*Attorneys for Defendants State of Maryland;
Baltimore City Detention Center*

Michael Kanovitz, Esquire
Sarah Grady, Esquire
Steve Art, Esquire
Anand Swaminathan, Esquire
Theresa Kleinhaus, Esquire
Tony Balkissoon, Esquire
Loevy and Loevy
311 N. Aberdeen  3rd Floor
Chicago, IL  60607
mike@loevy.com
sarah@loevy.com
steve@loevy.com
anand@loevy.com
tess@loevy.com
tony@loevy.com
*Attorneys for Plaintiffs*

Cierra Ladson
5324 Todd Avenue
Baltimore,  MD  21206
*Pro Se* Defendant
(VIA FIRST CLASS MAIL)

  /s/ J. Michael Sloneker
J. Michael Sloneker (Bar no.: 03324)

23