IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ESTATE OF FATIMA NEAL, et al | * |
| Plaintiffs | * |
| v. | *   Case no.:  15-CV-03278-ELH |
| STATE OF MARYLAND, et al | * |
| Defendants | * |

\* \* \* \* \* \* \* \* \* \* \*

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL ONE HOUR RULE 30(b)(6) DEPOSITION
REGARDING LATE-PRODUCED MEDICAL RECORD METADATA**

Defendants, Wexford Health Sources, Inc. ("Wexford") and Elizabeth Obadina, Andria Wiggins, P.A., Ebere Ohaneje, R.N., Anike Ajayi, R.N., Najma Jamal, R.N., Karen McNulty, R.N., Jocelyn El-Sayed, M.D., Getachew Afre, M.D., and Oby Atta, C.R.N.P., (collectively the "Individual Medical Defendants"), by and through their attorneys, J. Michael Sloneker and Megan J. McGinnis, file this Opposition to Plaintiff's Motion to Compel One Hour Rule 30(b)(6) Deposition Regarding Late-Produced Medical Record Metadata, and state as follows:

**I.     Argument**

First, despite the fact that this is plainly a discovery dispute between Plaintiff and three non-parties, the State of Maryland, the Department of Public Safety and Correctional Services ("DPSCS') and the Baltimore City Detention Center ("BCDC"),[1] Plaintiff has nevertheless used it as yet another opportunity to attempt to paint Wexford and the Individual Medical Defendants as obstructionist. Plaintiff contends that "the metadata information for the medical records

---

[1] Plaintiff's motion purportedly seeks a Court order compelling the "Custody Defendants" to produce a deponent, but the custody defendants are eight current and former employees of the Maryland Department of Public Safety and Correctional Services, and how those individuals had the authority to require the State of Maryland or the BCDC to produce someone to testify in response to the order Plaintiff seeks is a mystery. This is, in reality, a dispute between Plaintiff and these non-parties.

1

created in this case . . . was requested as part of Plaintiff's initial discovery requests on May 12, 2016." (Pl.'s Mot. at 3). This contention is somewhat confusing because, at the time those requests were propounded, all "entity defendants" other than Wexford had been dismissed from this case. (ECF No. 28). Wexford did not produce Ms. Neal's medical records in their "native format" in response to this request for production because "native format" versions of her electronic medical records were not within its possession, custody, or control. Indeed, as Wexford and the Individual Medical Defendants made clear in their response to Plaintiff's Request for Inspection, "the 'computer system' used by medical staff at the BCDC is owned, possessed and controlled by DPSCS and/or the State of Maryland." (Ex. 1, Med. Defs.' Resp. to Pl.'s Req. for Inspection). Nowhere in her motion does Plaintiff contend that Wexford should have produced these documents.

Ultimately, whether and when this information should have been produced is between the Plaintiff and non-parties to this action, the State of Maryland, the DPSCS, and the BCDC, since the Custody Defendants (all of whom are individual current or former DPSCS employees) have also made clear that they do not have possession, custody, or control over the "computer system used by medical staff at the BCDC." (Ex. 2, Custody Defs.' Resp. to Pl.'s Req. for Inspection). But it is notable that Plaintiff's Motion entirely omits any reference to her document subpoenas to the State of Maryland, the DPSCS, and the BCDC, which were served in late-September 2016. (Ex. 3 Subpoenas to BCDC, DPSCS, and State of Maryland.) This omission is curious because these non-parties were plainly the appropriate subject of subpoenas seeking the production of Ms. Neal's medical records in their native format. And while the subpoenas to these entities do seek electronically stored information, unlike Plaintiff's document request to Wexford, they do not specify that it should be produced in its native format. Accordingly, Wexford is left to

conclude that Plaintiff did not mention these subpoenas because she recognizes that she did not actually request the medical records in their native format from the entities that had possession, custody, or control over those documents. *See, e.g.,* Fed. R. Civ. P. 34(b)(E) ("If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably useable form."). Critically, moreover, what has now been produced by DPSCS is not Ms. Neal's electronic medical records in their native format. Rather, it is a spreadsheet displaying metadata from Ms. Neal's medical records that has been prepared by an employee of Medicalistics, LLC also non-party to this litigation. Such a spreadsheet unquestionably was not sought by Plaintiff in her initial request for production or by her subpoenas, but rather, was sought for the first time by Plaintiff in her correspondence dated July 14, 2017, which requested the metadata itself, apparently as an alternative to her purported prior requests for the medical records in their native format. (ECF No. 200-9).

In her memorandum, Plaintiff asserts that the metadata she has now obtained was responsive to her initial requests for production and inspection, but she glosses over the fact that she did not ever file a motion to compel the electronic medical records in their native format, or to compel the inspection of the "computer system used by medical staff at the BCDC," despite the fact that these requests were made approximately fifteen months ago and nine months ago, respectively. Nor, if she does take the position that Ms. Neal's medical records in their native format were responsive to her subpoenas to the State of Maryland, the DPSCS, and the BCDC, did she file an action to enforce those subpoenas to obtain these documents, despite the fact that these subpoenas were served more than eleven months ago. Instead, on July 14, 2014, just one month before the discovery deadline, as extended by Court order, she sent a letter to counsel for

the Custody Defendants, who is also counsel for the State of Maryland, the DPSCS, and the BCDC, "reiterating her request for production and/or inspection of the metadata of Ms. Neal's medical records." (ECF No. 200-9). Given Plaintiff's utter failure to pursue any of the avenues available to her to obtain Ms. Neal's medical records in their native format, including additional subpoenas to, or an action to enforce her existing subpoenas to, the DPSCS and the State of Maryland, who had been identified by Wexford as the likely custodians of those documents as early as November 30, 2016, it is clear that Plaintiff did not diligently pursue the metadata of Ms. Neal's electronic medical records.

Although this dispute is largely between Plaintiff and non-parties, Wexford and the Individual Medical Defendants do object to the deposition Plaintiff now seeks, although not for the reasons Plaintiff suggests in her motion. To be clear, Defendants do not object to the deposition of someone competent to interpret the metadata on substantive grounds. In fact, testimony interpreting the metadata may well be beneficial to them in explaining the benign nature of several of the "discrepancies" Plaintiff has identified. However, denying Plaintiff's Motion to Compel this deposition would not prevent her from introducing testimony about the metadata at trial, as the identity of witnesses capable of offering this testimony has been disclosed to her. Second, contrary to Plaintiff's assertion, Defendants' objection is entirely based on the burden the deposition poses. The discovery deadline passed three weeks ago; yet instead of moving on to motions for summary judgment and the motions *in limine* necessary to bring this case to its scheduled trial in December, Plaintiff insists on continuing to flounder in discovery. The burden of continued discovery on Defendants is great, both financially and with respect to the ever-increasing likelihood that the trial of this matter will be postponed. Defendants are eager

for the resolution of this case, and they fear that their day in court may never come, as Plaintiff apparently wishes to linger in discovery indefinitely.

Finally, Wexford and the Individual Medical Defendants wish to correct several inaccuracies in Plaintiff's motion. It was not until May 31, 2017, more than a year into discovery, and just one month before the discovery deadline at that time, June 31, 2017, that Plaintiff began actively pursuing the issue of "altered" medical records via her third set of interrogatories to each of the Individual Medical Defendants. To be clear, this was the very last day on which Plaintiff could, at the time, have served interrogatories on Defendants. Local Rule 104.2. Plaintiff's interrogatory asked:

> Have you ever altered an electronic medical record at the Baltimore City Detention Center after it had been initially submitted? If your answer to this question is anything other than an unqualified "no," please describe each such instance where you did so, including but not limited to any such instance where you did so with respect to one of Fatima Neal's electronic medical records.

(See, e.g., Ex.4, Afre Ans. to Pl.'s Interrogs, at No. 6.). Each Individual Medical Defendant initially answered this Interrogatory by objecting on several grounds and stating that he or she "did not alter an electronic medical record related to the care of Fatima Neal between November 1 and 4, 2012, after initially submitting any such records." (*Id.*) Dissatisfied with these responses, on July 24, 2017, Plaintiff demanded that Defendants supplement their answers, and on August 2, 2017, Defendants agreed to do so. It was through Defendants' efforts to supplement their answers to this interrogatory that Defendants first became aware of the identity of the three individuals whom Defendants disclosed less than two weeks later, on August 15, 2017.

As for Plaintiff's assertions regarding the disclosure of these three additional individuals, as noted above, the Individual Medical Defendants began undertaking efforts to supplement their answers to this interrogatory following an August 2, 2017 discovery conference with Plaintiff's Counsel. Just one week later, Defendants served an unexecuted supplemental answer to the

interrogatory on Plaintiff's counsel on Wednesday, August 9, 2017. (Ex. 5, McGinnis Email, Aug. 9, 2017). In their supplemental answer, the Individual Medical Defendants disclosed to Plaintiff that their "understanding of the EPHR system used to document medical encounters at the WDC in the fall of 2012" was based on information obtained from "Medicalistics, LLC, the vendor that provides the EPHR system to the Maryland Department of Public Safety and Correctional Services ("DPSCS") pursuant to a contract with NextGen Healthcare." (Ex. 6, Defs.' Supp. Ans. to Pl.'s Interrogs at No. 6). Less than a week after that, Defendants further supplemented their discovery responses to identify one Medicalistics, LLC employee and two DPSCS employees as individuals who may have knowledge of facts related to this case, consistent with their ongoing discovery obligations.[2] (Ex. 7, McGinnis Letter, Aug. 15, 2017). Contrary to Plaintiff's suggestion, Defendants did not sit on the identities of these individuals, or strategically wait until the last day of discovery to disclose them. Rather, Defendants disclosed their identities to Plaintiff promptly.

More startling than Plaintiff's suggestion that Defendants improperly withheld this information, however, is Plaintiff's claim that Wexford and the Individual Medical Defendants "refused to produce" these individuals for a deposition. (Pl.'s Mot. at 9). This is a misrepresentation. Plaintiff did not request that Wexford and the Individual Medical Defendants produce these individuals. Rather, Plaintiff's counsel stated: "Plaintiff insists on depositions of each of these late-disclosed witnesses. Please let us know your position." (Ex. 8, Art Email, Aug. 15, 2017). Defendants' position was that they were opposed to these additional depositions. Moreover, as for Wexford and the Individual Medical Defendants' ability to "produce" these individuals, two of the individuals, Arthur Ray and Lisa Vraunch, are employees of DPSCS. (Ex.

---

[2] The delay between the August 9 disclosure and the August 15 disclosure was to confirm contact information for and titles of the individuals.

7). As Plaintiff knows from her extensive discovery in this case regarding the relationship between Wexford and DPSCS, they are separate entities. Wexford has no power or authority over DPSCS and its employees and no ability to produce DPSCS employees for a deposition. The third individual, William Miller, is an employee of Medicalistics, LLC, which Wexford previously identified as the vendor that provides the EPHR system to the DPSCS pursuant to a contract with NextGen Healthcare." (Ex. 6). That is, Mr. Miller is an employee of a company over which Wexford also has no power or authority. Accordingly, as was obvious to Plaintiff both at the time she requested depositions of these individuals and when she filed the instant motion with the Court, Wexford has neither the ability nor the authority to produce any of these individuals for a deposition. Nor did Wexford hide the ball on this front, as it provided contact information for each individual to Plaintiff when that information was obtained. (Ex. 7). Plaintiff's suggestion to the Court that Wexford has "refused" to produce these individuals is disingenuous at best. If Plaintiff sought to depose these individuals, she should have done so through DPSCS counsel, with respect to the DPSCS employees, and either through DPSCS counsel or directly, with respect to the Medicalistics, LLC employee. Beyond promptly disclosing the identity of these individuals, Wexford's and the Individual Medical Defendants' discovery obligations required nothing further.

## II.   CONCLUSION

For the reasons set forth above, Wexford and the Individual Medical Defendants respectfully request that the Court deny Plaintiff's Motion to Compel One Hour Rule 30(b)(5) Deposition Regarding Late-Produced Medical Record Metadata.

Respectfully Submitted,

 /s/ J. Michael Sloneker
J. Michael Sloneker (Bar no.: 03324)
Megan J. McGinnis (Bar no.: 12810)
Anderson, Coe & King, LLP
Seven Saint Paul Street, Suite 1600
Baltimore, MD  21202
(T) 410-752-1630/  (F) 410-752-0085
sloneker@acklaw.com/  mcginnis@acklaw.com
*Attorneys for Defendants Wexford Health Sources, Inc.; Elizabeth Obadina, RN; Andria Wiggins, PA; Ebere Ohaneje, RN; Anike Ajayi, RN; Najma Jamal, RN; Karen McNulty, RN; Jocelyn El-Sayed, MD; Getachew Afre, MD; Oby Atta, CRNP*

Certificate of Service

       I HEREBY CERTIFY that on this 6th day of September, 2017 a copy of the foregoing Defendants' Response in Opposition to Plaintiff's Motion to Compel One Hour Rule 30(b)(6) Deposition Regarding Late-Produced Medical Record Metadata was served via electronic mail and/or via first class mail to:

| | |
|---|---|
| Fareed Nassor Hayat, Esquire | Laura Mullally, Esquire |
| Masai D. McDougall, Esquire | Beverly Hughes, Esquire |
| Norrinda Hayat, Esquire | Assistant Attorney General |
| The People's Law Firm, LLC | Office of the Attorney General |
| 14908 Notley Avenue | 300 East Joppa Road, Suite 1000 |
| Silver Spring, MD 20905 | Towson, MD 21286 |
| Fareed.hayat@thepeopleslawfirm.net | Laura.mullally@maryland.gov |
| Masai.mcdougall@thepeopleslawfirm.net | Beverly.hughes@maryland.gov |
| Norrinda.hayat@thepeopleslawfirm.net | *Attorneys for Defendants State of Maryland;* |
| *Attorneys for Plaintiffs* | *Baltimore City Detention Center* |

| | |
|---|---|
| Michael Kanovitz, Esquire | Cierra Ladson |
| Sarah Grady, Esquire | 5324 Todd Avenue |
| Steve Art, Esquire | Baltimore, MD 21206 |
| Anand Swaminathan, Esquire | *Pro Se* Defendant |
| Theresa Kleinhaus, Esquire | (VIA FIRST CLASS MAIL) |
| Tony Balkissoon, Esquire | |
| Loevy and Loevy | |
| 311 N. Aberdeen 3rd Floor | |
| Chicago, IL 60607 | |
| mike@loevy.com | |
| sarah@loevy.com | |
| steve@loevy.com | |
| anand@loevy.com | |
| tess@loevy.com | |
| tony@loevy.com | |
| *Attorneys for Plaintiffs* | |

                                                         /s/ J. Michael Sloneker  
                                                         J. Michael Sloneker (Bar no.: 03324)