## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

SHARON BOST, individually and as
the personal representative of the
ESTATE OF FATIMA NEAL,

    *Plaintiff,*

    *v.*

WEXFORD HEALTH SOURCES,
INC. *et al*.,

    *Defendants.*

Civil Action No. ELH-15-3278

## MEMORANDUM OPINION

This case, which has been fiercely contested for several years, arises from the tragic death of Fatima Neal in November 2012, at the age of 42, while she was detained at the Baltimore City Detention Center ("BCDC"). In 2015, plaintiff Sharon Bost, the mother of Ms. Neal, filed suit against multiple defendants, both individually and as Personal Representative of the Estate of Fatima Neal. ECF 1. All claims have been resolved, with the exception of one claim against defendant Wexford Health Sources, Inc. ("Wexford"), the health care provider at BCDC at the relevant time. That claim is founded on 42 U.S.C. § 1983 and *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

This Memorandum Opinion resolves the motion for partial summary judgment filed by Wexford against plaintiff as to her claim filed in her individual capacity. ECF 518 (the "Motion"). The Motion does not concern the claim lodged by plaintiff in her capacity as the representative of Ms. Neal's estate. ECF 518 at 3, 10. Plaintiff opposes the Motion. ECF 522. Defendant has replied. ECF 526.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion.

## I. Background

The voluminous facts of this case were recounted in prior judicial opinions. *See* ECF 159; ECF 430; ECF 499. I shall incorporate here by reference the factual summaries previously set forth in those opinions. The facts recounted below are generally limited to those pertinent to the Motion.

BCDC is a State correctional facility located in Baltimore City, operated by the Maryland Department of Public Safety and Correctional Services ("DPSCS"). ECF 430 at 5. In July 2012, Wexford assumed the direct patient care contract for DPSCS, at which point it was responsible for all medical care at BCDC and other DPSCS facilities. ECF 477-27 (Inmate Medical Health Care and Utilization Services Contract), ¶ 6; *see id.* at 4-6. In its contract with the State, Wexford agreed that "[e]very effort will be made to render appropriate care to Inmates onsite for emergency events, so long as the onsite efforts are not contrary to the health and well being of the Inmate." *Id.* at 6. Further, the contract provided that Wexford was "fiscally responsible for emergency room services provided to Inmates." *Id.*

Beginning on November 1, 2012, Neal suffered a stroke or a series of strokes while detained at BCDC. ECF 430 at 32-36. According to plaintiff, over the following three days, while Neal was in the infirmary, she displayed acute stroke symptoms, yet Wexford's medical staff did not seek emergency medical assistance. *See id.* at 8-25. Neal was found unresponsive at 12:35 a.m. on November 4, 2012. *Id.* at 25. Nonetheless, a 911 crew did not arrive until 3:53 a.m. ECF 233-6 at 28. Ms. Neal was transported to the hospital, where she was pronounced dead. ECF 430 at 29-30.

In a First Amended Complaint (ECF 56) ("Amended Complaint"), Bost sued Wexford, the State of Maryland, BCDC, members of the medical staff employed by Wexford (the "Medical Defendants"), and various BCDC correctional officers (the "Custody Defendants"). *Id.* ¶¶ 40-48. The Amended Complaint asserted nine claims for relief, including, *inter alia*, denial of adequate medical care, in violation of the Eighth and Fourteenth Amendments; medical malpractice; negligence; and intentional infliction of emotional distress. *Id.* at 28-43.

Of import here, the "Second Claim for Relief" (also referred to as the "Second Claim" or the *Monell* claim) lodges a *Monell* claim against Wexford under 42 U.S.C. § 1983, alleging an unconstitutional policy and practice of denying adequate medical care. *Id.* ¶¶ 169-86; *see Monell*, 436 U.S. 658.[1]  The Second Claim for Relief also seeks "attorney's fees and costs pursuant to 42 U.S.C. § 1988 . . . ." ECF 56, ¶ 185.  The "Seventh Claim for Relief" (*i.e.*, the "Seventh Claim") lodges a "Wrongful Death" claim against all defendants. *Id.* at 45.  That claim invokes Md. Code (2020 Repl. Vol.), § 3-902 of the Courts and Judicial Proceedings Article ("C.J."), which concerns "Wrongful death actions" under Maryland law, as well as "Ms. Bost's constitutional right to due process . . . ." ECF 56, ¶¶ 241, 242.  Notably, the Amended Complaint does not explicitly indicate whether each claim is asserted by plaintiff in her individual capacity, her representative capacity, or both.

Wexford and the Medical Defendants (ECF 130), as well as the Custody Defendants (ECF 135), moved to bifurcate plaintiff's *Monell* claim and to stay discovery as to that claim.  By Memorandum Opinion (ECF 159) and Order (ECF 160) of May 8, 2017, I granted those motions.

---

[1] On August 31, 2016, Judge J. Frederick Motz dismissed Bost's claims against the State, BCDC, and the Custody Defendants, in their official capacities, based on Eleventh Amendment immunity.  ECF 89.  Judge Motz also dismissed Bost's claim for negligence against the Custody Defendants in their individual capacities.  *Id.*

In my Memorandum Opinion, I concluded that bifurcation of the *Monell* claim was appropriate in order to conserve resources, promote judicial efficiency, and to avoid a significant risk of prejudice to the individual defendants.  ECF 159 at 27.

After the close of discovery, the Custody Defendants (ECF 212) and the Medical Defendants (ECF 213) moved for summary judgment.  In a Memorandum Opinion (ECF 430) and Order (ECF 431) of July 31, 2018, I entered summary judgment in favor of the Custody Defendants on all claims, dismissing them from the suit.  *See* ECF 431.  In addition, I granted the Medical Defendants' motion in part, dismissing Bost's claim for intentional infliction of emotional distress. But, I denied the motion as to Bost's § 1983 claim for inadequate medical care/deliberate indifference, as well as for the claims of medical malpractice and wrongful death.  *Id.*

Bost and the Medical Defendants entered into a settlement agreement on November 6, 2018, about one month before trial was set to begin on the remaining claims, other than the *Monell* claim.  ECF 443.  Pursuant to Local Rule 111, the Court issued a Settlement Order.  ECF 444.  It stated: "The settled claims include all of those against the remaining individual Defendants . . . . The Section 1983 and 1988 claim brought directly against Wexford Health Sources, Inc., has not been settled . . . ."  *Id.*; *see also* ECF 518-3 (consisting of excerpts of the "Settlement Agreement And Release") at 1.

As a result, Bost's *Monell* claim against Wexford is the only remaining claim in the case. Plaintiff and Wexford have been actively engaged in discovery as to the *Monell* claim.[2]  The pending dispute as to the scope of the *Monell* claim emerged during the fall of 2020.  *See* ECF 518-1 (containing correspondence between counsel); ECF 518-2 (same).

---

[2] The parties have had several discovery disputes, which are not relevant here.  *See* ECF 499 at 6-12.

## II.  Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020); *Variety Stores, Inc. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).  To avoid summary judgment, the nonmoving party must demonstrate that there is a genuine dispute of material fact so as to preclude the award of summary judgment as a matter of law.  *Ricci v. DeStefano*, 557 U.S. 557, 585-86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Gordon v. CIGNA Corp.*, 890 F.3d 463, 470 (4th Cir. 2018).

The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion.  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id.* at 248.

There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc.*, 888 F.3d at 659; *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).  On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252.  But, "the mere existence of a scintilla

of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004); *see Celotex*, 477 U.S. at 322-24. And, the court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party. *Ricci*, 557 U.S. at 585-86; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *accord Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Variety Stores, Inc.*, 888 F.3d at 659; *Gordon*, 890 F.3d at 470; *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Wilson v. Prince George's Cty.*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). That said, "a party's 'self-serving opinion

. . . cannot, absent objective corroboration, defeat summary judgment.'" *CTB, Inc*., 954 F.3d at 658-59 (quoting *Williams v. Giant Food Inc.,* 370 F.3d 423, 433 (4th Cir. 2004)).  In other words, "[u]nsupported speculation is not sufficient to defeat a summary judgment motion."  *Felty v. Graves-Humphreys Co*., 818 F.2d 1126, 1128 (4th Cir. 1987); *Harris v. Home Sales Co*., 499 F. App'x 285, 294 (4th Cir. 2012).

### III.  Section 1983

Under § 1983, a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983; *see, e.g.*, *Nieves v. Bartlett*, ___ U.S. ___, 139 S. Ct. 1715, 1721 (2019); *Filarsky v. Delia*, 566 U.S. 377, 383 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 575 U.S. 983 (2015).  However, § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017).

Section 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief."  *City of Monterey v. Del Monte Dunes at Monterey, Ltd*., 526 U.S. 687, 707 (1999).  "The first step in any such claim is to pinpoint the specific right that has been infringed."  *Safar*, 859 F.3d at 245.

"To state a claim under Section 1983, a plaintiff must show that the alleged constitutional deprivation at issue occurred because of action taken by the defendant 'under color of . . . state law.'"  *Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019) (quoting *Philips v. Pitt Cty. Mem'l*

*Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see also Filarsky*, 566 U.S. at 383; *West v. Atkins*, 487 U.S. 42, 48 (1988); *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Medical Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009).  The phrase "under color of state law" is an element that "is synonymous with the more familiar state-action requirement—and the analysis for each is identical."  *Philips*, 572 F.3d at 180; *see Davison*, 912 F.3d at 679; *see also Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 929 (1982).  A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk Cty. v. Dodson*, 454 U.S. 312, 317-18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Philips*, 572 F.3d at 181 ("[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient.") (citations and internal quotation marks omitted).

In *Monell*, 436 U.S. 658, the Supreme Court explained that a municipality is subject to suit under § 1983 based on the unconstitutional actions of individual defendants where those defendants were executing an official policy or custom of the local government that violated the plaintiff's rights.  *Id.* at 690-91.  As the *Monell* Court said, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury the government as an entity is responsible under § 1983." *Id.* at 694; *see Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004).  But, liability attaches "only where the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original); *accord Holloman v.*

*Markowski*, 661 F. App'x 797, 799 (4th Cir. 2016) (per curiam), *cert. denied*, 137 S. Ct. 1342 (2017).

In *Connick v. Thompson*, 563 U.S. 51, 60 (2011), the Supreme Court explained (emphasis in *Connick*):

> A municipality or other local government may be liable under [§ 1983] if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 692 (1978). But, under § 1983, local governments are responsible only for "their *own* illegal acts." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (citing *Monell*, 436 U.S. at 665-683). They are not vicariously liable under § 1983 for their employees' actions. *See id*., at 691; *Canton*, 489 U.S. at 392; *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997) (collecting cases).

Thus, a viable § 1983 *Monell* claim consists of two components: (1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights. *See, e.g.*, *Bd. of Comm'rs of Bryan Cty., v. Brown*, 520 U.S. 397, 403 (1997); *Kirby v. City Of Elizabeth City, N. Carolina*, 388 F.3d 440, 451 (4th Cir. 2004); *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).

However, a municipality cannot be held liable in a § 1983 action under a theory of respondeat superior. *Monell*, 436 U.S. at 693-94. Rather, "[i]t is well established that in a § 1983 case a city or other local governmental entity cannot be subject to liability at all unless the harm was caused in the implementation of 'official municipal policy.'" *Lozman v. City of Riviera Beach*, ___ U.S. ___, 138 S. Ct. 1945, 1951 (2018) (citation omitted); *see Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984). In other words, a municipality is liable when a "policy or custom" is "fairly attributable to the municipality as its 'own,' and is . . . the 'moving force' behind the particular constitutional violation." *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir.

1987) (internal citations omitted); *see Moore v. Howard Cty. Police Dep't*, CCB-10-1430, 2010 WL 4722043, at *2 (D. Md. Nov. 15, 2010).

A plaintiff may demonstrate the existence of an official policy in three ways: (1) a written ordinance or regulation; (2) certain affirmative decisions of policymaking officials; or (3) in certain omissions made by policymaking officials that "manifest deliberate indifference to the rights of citizens." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of Comm'rs of Bryan Cty.*, 520 U.S. at 403-04.

"An official policy often refers to 'formal rules or understandings . . . that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time,' and must be contrasted with 'episodic exercises of discretion in the operational details of government.'" *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999) (alteration in *Semple*; citations omitted). In addition, "the governmental unit may create an official policy by making a single decision regarding a course of action in response to particular circumstances." *Id.* Of relevance here, "[o]utside of such formal decisionmaking channels, a municipal custom may arise if a practice is so 'persistent and widespread' and 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'" *Carter*, 164 F.3d at 218 (quoting *Monell*, 436 U.S. at 691); *see Simms ex rel. Simms v. Hardesty*, 303 F. Supp. 2d 656, 670 (D. Md. 2003).

A policy or custom "may be attributed to a municipality when the duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees." *Spell*, 824 F.2d at 1387; *see Holloman*, 661 Fed. App'x at 799. In addition, "a policy or custom may possibly be

inferred from continued inaction in the face of a known history of widespread constitutional deprivations on the part of city employees, or, under quite narrow circumstances, from the manifest propensity of a general, known course of employee conduct to cause constitutional deprivations to an identifiable group of persons having a special relationship to the state." *Milligan*, 743 F.2d at 229 (internal citations omitted).

In *Owens*, 767 F.3d at 402, the Fourth Circuit reiterated that, to establish a *Monell* claim, the plaintiff "must point to a 'persistent and widespread practice[] of municipal officials,' the 'duration and frequency' of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" (Quoting *Spell*, 824 F.2d at 1386-91) (alteration in *Owens*).  Therefore, "Section 1983 plaintiffs seeking to impose liability on a municipality must . . . adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994).

A policy or custom that gives rise to § 1983 liability will not, however, "be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." *Milligan*, 743 F.2d at 230.  Only when a municipality's conduct demonstrates a "deliberate indifference" to the rights of its inhabitants can the conduct be properly thought of as a "policy or custom" actionable under § 1983.  *Jones v. Wellham*, 104 F.3d 620, 626 (4th Cir. 1997) (citing *Canton*, 489 U.S. at 389).

Of pertinence here, *Monell* liability has been extended to private entities operating under color of state law, including private prison health care providers.  *See, e.g.*, *West v. Atkins*, 487 U.S. 42, 49 (1988); *Polk Cty.*, 454 U.S. at 320; *Rodriguez v. Smithfield Packing Co., Inc.*, 338 F.3d

348, 355 (4th Cir. 2003); *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999); *Shields v. Prince George's Cty.*, GJH-15-1736, 2016 WL 4581327, at *7 (D. Md. Sept. 1, 2016). Standards applicable to municipalities are also applicable to private corporations acting under color of state law. *See Rodriguez*, 338 F.3d at 355 (observing that principles of § 1983 municipal liability "'apply equally to a private corporation'" acting under color of state law) (citation omitted).

## IV. Discussion

Much ink has already been spilled in the course of this case, which has been ongoing for more than five years. At summary judgment, the parties filed more than 7,200 pages of motions, memoranda, and exhibits. ECF 430 at 3. Nevertheless, in some respects this latest dispute goes back to square one. The question raised by the Motion is whether Bost has asserted the Second Claim in her individual capacity, in addition to her representative capacity, and, if so, whether, as a matter of law, she can bring an individual capacity *Monell* claim.

### A.

The current dispute centers on the language of the Second Claim for Relief, particularly as it pertains to the injury or injuries alleged and the persons injured. The parties disagree about the scope of the *Monell* claim. Their dispute concerns Ms. Bost's status as a plaintiff in her own name, *i.e.*, in her individual capacity. But, the parties agree that their continued use of the original case caption, which references Ms. Bost's individual and representative capacities, and Wexford's discovery requests to Ms. Bost in her individual capacity, do not determine whether Ms. Bost, in her individual capacity, is still a party to this case. ECF 518 at 9; ECF 522 at 7 n.4.

According to Wexford, a "simple reading of the Second Claim for Relief shows that no claim is asserted in it on behalf of Sharon Bost individually." ECF 526 at 3. Defendant describes the *Monell* claim as follows: "The Second Claim for Relief asserts injury to Ms. Neal alone . . .

and violations of her constitutional rights, without mention of Ms. Bost. . . .  Moreover, the *Monell* Claim seeks damages that are personal to Ms. Neal and recoverable by her estate, not damages flowing to Ms. Bost, individually, for any alleged injury to Ms. Bost."  ECF 518 at 4.

Plaintiff describes the language of the *Monell* claim quite differently.  She asserts, albeit without reference to the actual language of the claim, that it "seeks two primary categories of compensatory damages that were caused by Wexford's unconstitutional conduct: (1) the physical, mental, and emotional, pain and suffering that Ms. Neal was forced to suffer before her death, and (2) Ms. Neal's loss of life."  ECF 522 at 9.  In essence, plaintiff posits that the claim for the second category of damages is asserted in an individual capacity.  *See id.*

The heading of the Second Claim for Relief claim states the following, on separate lines: "<u>Violation of 42 U.S.C. § 1983</u> / Policy & Practice of Denial of Medical Care / (Against Wexford)."  (Emphasis and parentheses in original.)  ECF 56 at 31.  Thus, the heading does not explicitly indicate whether the claim is asserted in a representative and/or individual capacity.  Nor do the headings of any of the other claims so indicate.  *Id.* at 28, 35, 39, 42, 43, 45.

Before delving further into the content of the Amended Complaint, it is necessary to take stock of the statutory backdrop against which the claims must be viewed.  As mentioned, unlike the *Monell* claim, the Seventh Claim explicitly asserted wrongful death under Maryland law and invoked C.J. § 3-902.

The Maryland wrongful death statute is found in C.J. §§ 3-901 through 3-904.  C.J. § 3-902 is titled "Liability notwithstanding death."  It provides, in relevant part: "An action may be maintained against a person whose wrongful act causes the death of another."  *Id.*  In C.J. § 3-904(a)(1), it states, in part: "[A]n action under this subtitle shall be for the benefit of the wife, husband, parent, and child of the deceased person."

13

It is well settled that claims founded on the Maryland wrongful death statute are properly asserted by persons other than the decedent.  The Maryland Court of Appeals has explained:  "The primary beneficiaries of a wrongful death action are the spouse, parent, and child of the decedent. [C.J.] § 3–904(a)(1).  However, relatives by blood or marriage who substantially relied upon the decedent, are also eligible claimants.  [C.J.]  § 3–904(b)."  *Spangler v. McQuitty*, 449 Md. 33, 48, 141 A.3d 156, 165 (2016) (brackets added); *see Carter v. Wallace & Gale Asbestos Settlement Trust*, 439 Md. 333, 362, 96 A.3d 147, 164 (2014) (explaining that a claim under the Maryland wrongful death statute "is brought on behalf of the surviving heirs or beneficiaries for their loss resulting from the death of a spouse, parent or child"); *see also Eagan v. Calhoun*, 347 Md. 72, 82, 698 A.2d 1097, 1102 (1997); *United States v. Streidel*, 329 Md. 533, 536, 620 A.2d 905, 907 (1993); *Jones v. Prince George's Cty.*, 541 F. Supp. 2d 761, 764 (D. Md. 2008), *aff'd*, 355 F. App'x 724 (4th Cir. 2009).

Notably, the Maryland wrongful death statute does not encompass the survivorship claims of a decedent.  In Maryland, two separate statutes are relevant to such claims.  C.J. § 6-401 is titled "Survival of actions."  It states that "a cause of action at law, whether real, personal, or mixed, survives the death of either party," with the exception of a cause of action for slander.  *Id.* § 6-401(a), (b).  And, Md. Code (2017 Repl. Vol., 2020 Supp.), § 7-401(y) of the Estates and Trusts Article ("E.T.") is also pertinent.  It recognizes the survival of claims "pursued by the personal representative of the decedent's estate for claims that the decedent could have prosecuted 'against a tort-feasor for a wrong which resulted' in his death."  *Dowling v. A.R.T. Inst. of Washington, Inc.*, 372 F. Supp. 3d 274, 289 (D. Md. 2019) (quoting E.T. § 7-401(y)(1)(ii)).

A survival action initiated pursuant to C.J. § 6-401 and E.T. § 7-401(y) is distinct from a wrongful death cause of action brought under C.J. § 3-902.  "In a survival action, the cause of

action arises from the injuries sustained by the victim and is commenced by the personal representative of the deceased, seeking damages for the injuries suffered by the victim and prosecuted as if the victim were still alive. . . .  In contrast, a wrongful death action is brought by the relatives of the decedent, seeking recovery for their [own] loss as a result of the victim's death." *Jones*, 541 F. Supp. 2d at 764 (brackets added); *see Starr v. United States*, 262 F. Supp. 2d 605, 607 n.1 (D. Md. 2003) ("Under Maryland law, claims for survival and wrongful death, although both arising upon a person's death, differ importantly."); *see also Dowling*, 372 F. Supp. 3d at 289 (comparing the two laws).

 With the foregoing principles in mind, I turn to the language of the *Monell* claim, especially as compared to the Seventh Claim.

The first twenty-five paragraphs of the Second Claim set forth allegations regarding Wexford's role in the events leading up to Ms. Neal's death.  *Id.* ¶¶ 169-83.  Paragraphs 184, 185, and 186 are especially relevant here.  They state:

> 184. As a direct result of Defendants' unlawful conduct, Ms. Neal suffered tremendous pain, injuries, anguish, suffering, and, ultimately, death, entitling her Estate to compensatory and special damages by way of survival.
>
> 185. Plaintiff is further entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988, as well as pre-judgment interest and costs as allowable by federal law.
>
> 186. Plaintiff is entitled to punitive damages against each of the Defendants to this claim, in that their actions were made maliciously, willfully, and with a reckless and wanton disregard of Plaintiff's life and constitutional rights.

Clearly, ¶ 184 mentions harm to Ms. Neal caused by Wexford, including her death.  And, it explicitly asserts that Ms. Neal's *estate* is owed "compensatory and special damages" arising from that harm.  In contrast, ¶ 184 does not reference harm suffered by Ms. Bost.

Paragraphs 185 and 186 claim additional damages, fees, and costs to which "Plaintiff" is entitled.  Notably, ¶ 186 uses "Plaintiff" twice in a single sentence, which consists of two clauses.

The second clause references Wexford's "reckless and wanton disregard of Plaintiff's life and constitutional rights." That reference to "Plaintiff" logically refers to Ms. Neal, because it was her life that was lost. Given that ¶ 186 is a single sentence, it is also logical to construe "Plaintiff" in the first clause to have the same meaning as "Plaintiff" in the second clause. Thus, ¶ 186 appears to assert that Ms. Neal is entitled to damages. Moreover, when ¶ 184 is read together with ¶¶ 185, 186, it seems that the Second Claim is lodged on behalf of Ms. Neal, via the representative of her estate. *Cf. Yates v. United States*, 574 U.S. 528, 543 (2015) (explaining that pursuant to "the principle of *noscitur a sociis*," a "word is known by the company it keeps"). Nothing in the language of the Second Claim indicates that the claim is also asserted by Ms. Bost in her individual capacity. Nor does it reference a wrongful death claim.

This construction of the Second Claim also makes sense when considered in light of the Amended Complaint as a whole. With the exception of the Seventh Claim and the Eighth Claim for Relief ("Eighth Claim"), each of the other claims specifies harms suffered by *Ms. Neal* and asserts that her *estate* is entitled to damages. In particular, ¶¶ 184-186 are identical to the last three paragraphs in the First Claim for Relief, which asserted a § 1983 claim against the Medical Defendants, the Health Care Defendants, and Wexford. *See id.* at 28, ¶¶ 166-68. And, ¶¶ 184-86 are, for present purposes, virtually identical to the final three paragraphs of the Third Claim for Relief, which asserted a claim founded on the Maryland Declaration of Rights. *See id.* ¶¶ 204-06. Moreover, the final paragraphs of the Fourth Claim for Relief, Fifth Claim for Relief, and Sixth Claim for Relief state that *Ms. Neal's estate* is entitled to damages. *Id.* ¶¶ 218, 225, 237.

In other words, six of the eight claims in the Amended Complaint are survival actions, rather than wrongful death actions. These six claims make no mention of harms suffered by Ms. Bost as an individual or demand damages owed to Ms. Bost in her individual capacity. Instead,

16

they specify that Ms. Neal's estate is entitled to damages.  As a member of this set, the language of the *Monell* claim reflects only an assertion of Ms. Neal's rights.  *Cf. Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 571 (2012) ("As we have said before, it is a 'normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning.'") (cleaned up) (quoting *Gustafson v. Alloyd Co.,* 513 U.S. 561, 570 (1995)).

The Eighth Claim does not shed any light on how to construe the *Monell* claim. The Eighth Claim asserted a respondeat superior claim against Wexford.  *Id.* at 46.  It consists of three paragraphs; does not reference damages; and, in essence, asserts that Wexford is liable for the torts committed by the other defendants.  *Id.* ¶¶ 245, 246.

In contrast to the first six claims, however, the Seventh Claim explicitly demanded damages owed to Ms. Bost individually.  As noted, the Seventh Claim asserted a wrongful death claim, founded on C.J. § 3-902.  It states, in relevant part, *id.* ¶¶ 241-43:

> 241.  Each of the Defendants' unconstitutional and deliberately indifferent acts, omissions, policies, practices, customs and approvals of such customs were wrongful acts within the meaning of Maryland Courts and Judicial Proceedings § 3-902, and was the proximate cause of Ms. Neal's untimely and wrongful death.
> 242. In addition, Defendants violated Ms. Bost's constitutional right to due process by intentionally causing the death of her daughter, as described in detail above.
>
> 243.  Ms. Sharon Bost, as Ms. Fatima Neal's mother, is entitled to recover for her mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, filial care, attention, advice and counsel related to the loss of her late daughter.

Significantly, ¶ 243 addresses harms suffered *by Ms. Bost* and specifies that she is entitled to damages as Ms. Neal's mother.  No mention is made of Ms. Bost's representative capacity or of Ms. Neal's Estate.  Moreover, ¶ 242 alleges a violation of *Ms. Bost's* "constitutional right to due process."

This language, when framed by the Maryland wrongful death statute, makes clear that in the Seventh Claim Ms. Bost asserts a claim only in her individual capacity.  For one, the wrongful

17

death statute creates a cause of action only for relatives and beneficiaries of a decedent.  And, the Seventh Claim references the violation of *Ms. Bost's* constitutional rights.  In these respects, the Seventh Claim differs conspicuously from the rest of the claims, including the *Monell* claim, which address injury to Ms. Neal only, and assert that Ms. Neal's estate is entitled to damages.  *Cf. AU Optronics Corp. v. South Carolina*, 699 F.3d 385, 391 (4th Cir. 2012) (explaining that a complaint must be considered "in its entirety" to determine the interest possessed by a party in "the lawsuit as a whole"); *Vila v. Inter-Am. Inv., Corp.*, 570 F.3d 274, 285 (D.C. Cir. 2009) (recognizing that allegations in a pleading must be considered "in their totality").

Accordingly, the plain language and structure of the Amended Complaint, informed by the Maryland wrongful death and survival laws, compel the conclusion that the Seventh Claim is the only claim asserted by Ms. Bost in her individual capacity.  As noted, that claim was dismissed, pursuant to the settlement agreement.  In contrast, the *Monell* claim is brought only in a representative capacity.  Plaintiff does not offer any meaningful analysis to the contrary.

**B.**

Nevertheless, Ms. Bost contends that the *Monell* claim must be construed according to the guidelines set forth in 42 U.S.C. § 1988(a).  In her view, the application of § 1988(a) requires construing the *Monell* claim to assert both an individual capacity and a representative capacity claim.

At the outset, it is important to state what Ms. Bost is *not* arguing.  She "does not contend that violation of [her] own constitutional rights are at issue."  ECF 522 at 7.  Wexford's Motion argues that Bost cannot bring a substantive due process claim in her individual capacity for the loss of her daughter's life.  ECF 518 at 6.  It is not entirely clear why Wexford pursued this argument, given that the *Monell* claim does not explicitly invoke substantive due process.  But, Wexford is correct that the Fourth Circuit has declined to recognize a substantive due process

claim "for loss of the love and support of a family member," where "deprivations resulting from government actions affect[ed] the family only incidentally." *Shaw v. Stroud*, 13 F.3d 791, 804-05 (4th Cir. 1994) (brackets added); *see Jones v. Prince George's Cty.*, AW-04-1735, 2005 WL 1074353, at *5 (D. Md. Apr. 28, 2005); *see also Gorman v. Rensselaer Cty.*, 910 F.3d 40, 48 (2d Cir. 2018) (joining the "consensus view of the circuit courts" that "a claim under the Due Process Clause for infringement of the right to familial associations requires the allegation that state action was specifically intended to interfere with the family relationship"). In any event, Ms. Bost clarifies in her opposition that she does not press the theory that the Second Claim asserts a violation of her own individual constitutional rights.

Rather, Bost's argument proceeds as follows. First, she observes that § 1983 does not explicitly "address the identity of the proper plaintiff or plaintiffs" when the person whose rights have been violated is deceased. ECF 522 at 8. Thus, the Court must look to § 1988(a) for guidance.

Titled "Applicability of statutory and common law," § 1988(a) provides, in relevant part:

> The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause . . . .

In *Burnett v. Grattan*, 468 U.S. 42, 47–48 (1984), the Supreme Court explained (quoting § 1988(a); ellipses added):

> The century-old Civil Rights Acts do not contain every rule of decision required to adjudicate claims asserted under them. In the absence of specific guidance, Congress has directed federal courts to follow a three-step process to borrow an appropriate rule. 42 U.S.C. § 1988. First, courts are to look to the laws of the United States "so far as such laws are suitable to carry [the civil and criminal civil

rights statutes] into effect." . . . .  If no suitable federal rule exists, courts undertake the second step by considering application of state "common law, as modified and changed by the constitution and statutes" of the forum State. . . .  A third step asserts the predominance of the federal interest: courts are to apply state law only if it is not "inconsistent with the Constitution and laws of the United States."

Put another way, § 1988(a) "recognizes that in certain areas 'federal law is unsuited or insufficient to furnish suitable remedies'; federal law simply does not 'cover every issue that may arise in the context of a federal civil rights action.'"  *Robertson v. Wegmann*, 436 U.S. 584, 588 (1978) (citation omitted; cleaned up).

Of import here, "one specific area not covered by federal law is that relating to 'the survival of civil rights actions under § 1983 upon the death of either the plaintiff or defendant.'"  *Id.* at 589 (citation omitted).  "Under § 1988," state law "provides the principal reference point in determining survival of civil rights actions, subject to the important proviso that state law may not be applied when it is 'inconsistent with the Constitution and laws of the United States.'"  *Id.* (quoting § 1988(a)); *see Pluet v. Frasier*, 355 F.3d 381, 383 (5th Cir. 2004); *Smith v. City of Greensboro*, 1:19-CV-386, 2020 WL 1452114, at *4 (M.D.N.C. Mar. 25, 2020) (stating that state law serves as the "'remedial reference point'" in assessing wrongful death and survivorship actions brought pursuant to § 1983) (citation omitted).

In effect, both sides agree in part on the application of the second and third steps of the § 1988(a) analysis to the facts here.  It is undisputed that the *Monell* claim is brought, at least in part, in Ms. Bost's representative capacity.  In other words, there is no dispute that, pursuant to § 1988(a), the Court must look to Maryland law to determine the survivorship of Ms. Neal's *Monell* claim against Wexford, and that the Maryland survival statutes, cited above, permit Ms. Bost to assert that claim on her daughter's behalf.  ECF 522 at 9; ECF 526 at 2.  Implicitly, both sides also agree that the third step of the § 1988(a) analysis is satisfied—that is, that the application of C.J. § 6-401 and E.T. § 7-401(y) is not inconsistent with federal law.

20

However, Ms. Bost also contends that because Maryland law recognizes distinct survival and wrongful death actions, the *Monell* claim should be construed to channel both.  ECF 522 at 10-11.  She acknowledges the complexity of this area of the law, noting that the Fourth Circuit has not addressed whether § 1988(a) permits the application of a wrongful death cause of action founded on state law to a § 1983 claim.  *Id.*; *see also Roberts v. Bodison*, 2:14-CV-00750-MGL-MGB, 2015 WL 13215670, at *3 (D.S.C. Nov. 20, 2015) ("Whether this court may adopt the forum state's wrongful death statute to apply to § 1983 claims is a matter of first impression in the Fourth Circuit."), *report and recommendation adopted*, CV 2:14-00750-MGL, 2015 WL 9581756 (D.S.C. Dec. 30, 2015).  Yet, the opposition provides little in the way of analysis or citation to legal authority.  *Id.* at 9-11.

The thrust of Wexford's reply is that Bost is attempting an end-run around the settlement agreement.  Defendant emphasizes that Bost previously asserted a State law wrongful death claim (the Seventh Claim), which was dismissed pursuant to the settlement agreement.  In defendant's view, Bost is now attempting to shoehorn a relinquished claim into the *Monell* claim.  *See* ECF 526 at 4-5.

My review of case law addressing the intersection of § 1983, survivorship, and wrongful death actions has not identified any decision in which a court recognized the theory advanced by Ms. Bost.  That is, to my knowledge, no court has allowed a § 1983 claim to proceed on a theory of wrongful death, as defined under state law, where the plaintiff did not have a pending wrongful death claim.  In various instances, courts have determined in the third step of the § 1988(a) analysis that state law causes of action for wrongful death are not inconsistent with federal law, and recognized that a § 1983 claim could recover damages as permitted by a state's wrongful death law.  But, in all of these cases the plaintiff had a pending wrongful death claim.  *See, e.g.*, *Carringer*

*v. Rodgers*, 331 F.3d 844, 850 (11th Cir. 2003); *Baker v. Putnal*, 75 F.3d 190, 193, 195 (5th Cir. 1996); *Brazier v. Cherry*, 293 F.2d 401 (5th Cir. 1961); *Becker v. Carbon Cty.*, 177 F. Supp. 3d 841, 842 (M.D. Pa. 2016); *Hoover v. Trent*, 1:07-CV-47, 2008 WL 2992987, at *4 (N.D.W. Va. Aug. 1, 2008); *Green ex rel. Est. of Green v. City of Welch*, 467 F. Supp. 2d 656, 661 (S.D.W. Va. 2006); *see also Smith*, 2020 WL 1452114, at *4 (describing two counts "styled as distinct claims seeking distinct remedies," one of which was captioned as "42 U.S.C. § 1983 – Wrongful Death," and the other captioned as "42 U.S.C. § 1983 – Survival Action"); *but see Berry v. City of Muskogee, Okl.*, 900 F.2d 1489, 1507 (10th Cir. 1990) (determining that the state wrongful death statute was inconsistent with federal law, and recognizing under federal common law the existence of a "survival action, brought by the estate of the decease victim, in accord with § 1983's express statement that the liability is 'to the party injured'"); *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984) (reasoning similarly).

In this case, Ms. Bost asserted wrongful death in the Seventh Claim, but agreed to the dismissal of that claim pursuant to the settlement agreement. Thus, she has resolved her wrongful death claim. Moreover, the *Monell* claim does not allege violation of Ms. Bost's rights or injury to Ms. Bost, as discussed. As I see it, under the circumstances here, Wexford is correct that, in effect, plaintiff seeks a second bite at the apple.

*Andrews v. Neer*, 253 F.3d 1052, 1064 (8th Cir. 2001), is informative. There, the plaintiff filed suit under § 1983 "for damages arising from the death of her father" while he was a patient at a state hospital in Missouri. *Id.* at 1055. The Eighth Circuit addressed whether the daughter could recover damages under § 1983 "for injuries she suffered as a result of her father's death." *Id.* at 1063. The *Andrews* Court adopted the Tenth Circuit's approach in *Berry*, 900 F.2d at 1507,

and concluded that damages made available by state law wrongful death claims are inconsistent with § 1983.

Of import here, however, the reasoning of the *Andrews* Court also emphasized that the plaintiff "did not bring a separate claim for injury to her own constitutional rights, nor did she pursue her supplemental state-law wrongful death claim." *Id.* at 1064. The Eighth Circuit reasoned that the plaintiff could not "shoehorn recovery available to her under such separate claims into the recovery she may receive under § 1983 for her father's injuries." *Id.*

I need not address whether Ms. Bost's recovery of damages made available under Maryland's wrongful death statute would necessarily be inconsistent with federal law. Although case law reflects varying approaches to the three-step § 1988(a) analysis in § 1983 death cases, none of the cases suggests that a plaintiff can avail herself of a state law wrongful death remedy if her § 1983 claim did not allege wrongful death and when there was no separate wrongful death claim still at play. Section 1988(a) was not "meant to authorize the wholesale importation into federal law of state causes of action." *Moor v. Alameda Cty.*, 411 U.S. 693, 703 (1973).

Accordingly, I conclude that the *Monell* claim is asserted only in Ms. Bost's representative capacity.

### V.  Conclusion

For the foregoing reasons, I shall grant the Motion (ECF 518).

An Order follows.


Date: April 2, 2021                                    _____/s/_____
                                                       Ellen L. Hollander
                                                       United States District Judge