IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SHARON BOST, in her individual capacity and as personal representative of the ESTATE OF FATIMA NEAL, *Plaintiff*, v. WEXFORD HEALTH SOURCES, INC., *Defendant* | Case No. 1:15-cv-03278-ELH<br><br>Judge Ellen L. Hollander |

**PLAINTIFF'S MOTION *IN LIMINE* NO. 9 TO BAR WEXFORD FROM TESTIFYING ABOUT AFTER-ACQUIRED EVIDENCE UNKNOWN TO MEDICAL PROVIDERS AT THE TIME THEY TREATED FATIMA NEAL**

Plaintiff SHARON BOST, by her attorneys, in her individual capacity and as personal representative of the Estate of Fatima Neal, respectfully moves *in limine* to bar Wexford from introducing after-acquired evidence regarding Fatima's medical history that her medical providers did not know at the time they treated her. In support of her motion, Plaintiff states as follows:

## INTRODUCTION

This motion seeks to bar Wexford from testifying to any information about Fatima's medical history or conditions that was not known to them before Fatima died. With the exception of what limited information was contained in Fatima's prison medical records, the entirety of her medical history was unknown to any of her treaters until after she was dead. Because the bulk of her medical information was unknown to any of her treaters at the time they treated—or failed to treat—Fatima, it sheds no light on their subjective states of mind at that time, is not relevant to any decision they made, and is not relevant to any treatment they provided or failed to provide.

1

Wexford should therefore be barred from testifying about medical facts they learned about Fatima after her death.

## DISCUSSION

This case is about whether Wexford had an unconstitutional policy or practice to withhold outside medical care from detainees who needed it. Information unknown to Wexford's medical providers when they interacted with Fatima Neal at the BCDC is irrelevant to the jury's evaluation of whether they were deliberately indifferent.

Jail medical records reflect that Fatima had previously reported to jail personnel that she had a history of HIV, hepatitis C, drug use, and a dietary iron deficiency, and had previously gotten psychological treatment. *E.g.*, Ex. A, Medical Records.[1] This was the extent of Wexford providers' knowledge of Fatima's underlying medical conditions at the time she suffered strokes and died at the BCDC.[2]

During discovery in the individual-liability phase of this case, Defendants learned for the first time about several medical conditions that Fatima had or was at risk of contracting. For example, Ms. Bost testified at her deposition that she has a hereditary bleeding disorder. Ex. B, Bost Dep., at 104:7-17, 131:15-134:4. Defendants also learned from Fatima's mother that Fatima was at risk of cataracts, fused dystrophia in her eyes, and degenerative bone disease—all hereditary—and that her maternal grandmother had arthritis. *Id.* at 44:14-45:3. Defendants also learned that Fatima had been sexually assaulted four years before she died. Moreover,

---

[1] The separate reasons for excluding reference to Fatima's unrelated medical conditions is explained in Plaintiff's Motion *In Limine* No. 8.

[2] There are a few references in Fatima's BCDC medical records suggesting that she wore glasses. Defendants likely were unaware of this fact. Although some of the individual providers explained that they typically review a patient's medical records during their course of treatment, *see* Ex. C, Afre Dep., at 203:3-18; Ex. D, El-Sayed Dep., at 170:19-172:21, some defendants also acknowledge that they do not review a patient's records, *see* Ex. E, Wiggins Dep., at 125:7-126:1, 127:6-18; Ex. F, Jamal Dep., at 403:17-404:6, none of the defendants testified knowing that Fatima wore glasses. Any references to glasses would be impermissible after-acquired evidence.

Defendants did not know until after Fatima died the specific types of brain injuries that Fatima suffered (ischemic strokes and hemorrhage) while she was at the BCDC.

Allowing Wexford to introduce evidence of Fatima's medical history that was previously unknown to its providers would violate the rule against admitting after-acquired evidence to retroactively validate a defendant's actions when intent is at issue. *See, e.g., Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303–04 (4th Cir. 2004) (court evaluates subjective awareness based on what prison guard knew at the time, "not as it now may be perceived enlightened by the benefit of hindsight"); *Schaub v. VonWald*, 638 F.3d 905, 915 (8th Cir. 2011) ("Deliberate indifference must be measured by the official's knowledge at the time in question, not by 'hindsight's perfect vision'") (internal citation and quotation marks omitted); *see also Waterman v. Batton*, 393 F.3d 471, 477 (4th Cir. 2005) (reasonableness of police officer's actions is based on information he had at the time he acted); *Soto-Muniz v. Martin*, 665 F. App'x 226, 229 (3d Cir. 2016) (courts base deliberate-indifference inquiry on what doctor knew at the time plaintiff was injured).

Here Wexford may try to explain its employees' failures to treat Fatima by pointing to medical conditions they did not know she had. But Wexford cannot rely on this information when to justify its providers' failure to treat Fatima while Fatima was having strokes at the BCDC because her providers did not know of this information at the time that they were assessing Fatima's condition. For example, Fatima complained of impaired vision before she was admitted to the infirmary. Ex. B, Bost Dep., at 149:21-150:9. Wexford should not be allowed to justify its employees' failure to recognize her stroke symptoms by attributing her blurred vision to cataracts, when they did not know at the time that cataracts ran in Fatima's family. Likewise, Wexford may try to retroactively justify its providers' failure to treat Fatima by pointing to

3

details about the types of strokes that she suffered and asserting that there was nothing they could have done to help her. But her treaters did not know specifics about her strokes, and therefore that information played no part in their decision making at the time.

Wexford here cannot introduce information unknown to its providers to justify actions they took—or did not take—when they interacted with Fatima. Instead Wexford should be limited to evidence about its providers' decision-making based on the knowledge they had at the time.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court enter an order barring Wexford from introducing after-acquired evidence regarding Fatima's prior medical history and conditions.

RESPECTFULLY SUBMITTED,

**SHARON BOST, in her individual capacity and as personal representative of the ESTATE OF FATIMA NEAL**

/s/ Anand Swaminathan
*Attorneys for Plaintiff*

/s/ Steve Art
*Attorneys for Plaintiff*

/s/ Rachel Brady
*Attorneys for Plaintiff*

/s/ Megan Porter
*Attorneys for Plaintiff*


Arthur Loevy
Michael Kanovitz
Anand Swaminathan
Steven Art

Rachel Brady
Megan Porter
LOEVY & LOEVY
311 North Aberdeen St.
Chicago, IL 60607
(312) 243-5900

Masai D. McDougall
Fareed Nassor Hayat
Norrinda Hayat
THE PEOPLE'S LAW FIRM
14908 Notley Avenue
Silver Spring, MD 20905

## CERTIFICATE OF SERVICE

I, Rachel Brady, an attorney, hereby certify that, on November 18, 2022, I filed the foregoing Plaintiff's Motion *in Limine* No. 9 TO BAR WEXFORD FROM TESTIFYING ABOUT AFTER-ACQUIRED EVIDENCE UNKNOWN TO THEM AT THE TIME THEY TREATED FATIMA NEAL using the Court's CM-ECF system, which effected service on all counsel of record.

/s/ Rachel Brady

Attorney for Plaintiff