IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SHARON BOST, in her individual capacity and as personal representative of the ESTATE OF FATIMA NEAL, | * * | |
| *Plaintiff*, | * | Case No. 1:15-cv-03278-ELH |
| v. | * | Judge Ellen L. Hollander |
| WEXFORD HEALTH SOURCES, INC., | * * | |
| *Defendant* | * * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S MOTION *IN LIMINE* NO. 2 TO BAR
WEXFORD FROM MAKING ARGUMENTS AND INTRODUCING EVIDENCE
RELATING TO WEXFORD'S KNOWING DESTRUCTION OF DOCUMENTS**

Plaintiff's expert, Dr. Ryan Herrington, reviewed a sample of medical records that Plaintiff was able to obtain in discovery, and concluded that a shockingly high percentage of those records contained evidence of delays in sending patients for offsite care. Ex. A (Herrington Report). Wexford and its experts (though they are not statisticians and are unqualified to offer any such opinions, *see* Plaintiff's Motion *in limine* No. 1) criticize Dr. Herrington for relying on what they say is too small a sample of individual medical records. Wexford should be barred from making this argument. As set forth in Plaintiff's motion *in limine* No. 1, it should be barred from doing so because it has not retained a statistician to offer an opinion about the appropriate sample size, and so it is attempting to offer undisclosed (and speculative) expert opinions and arguments. But it should be barred from making this argument for a second and independent reason: any limitations in Plaintiff's sample size are because Wexford refused to produce a single detainee's medical file in this case after knowingly failing to retain possession of such files.

**BACKGROUND**

The relevant background is as follows: Plaintiff filed this lawsuit in 2015, alleging denials of medical care and *Monell* claims relating to Wexford's provision of care to inmates across Maryland. ECF No. 1, at 25-27. Wexford was on notice of Plaintiff's entitlement to relevant records, and sent an internal email putting a litigation hold on potentially relevant documents. Exhibit B (Litigation Hold Email). Plaintiff's initial discovery requests, which she served in 2016, sought a variety of medical records from the Baltimore City Detention Center ("BCDC"), where Fatima died, specifically including medical files for other detainees who died in the BCDC. Ex. C (2016 Requests for Production), at Request Nos. 9, 10.

At that point, Wexford had the contract for direct medical care at the BCDC and other Maryland facilities between 2012 and 2018 (and for utilization management oversight of medical care since 2006). Wexford and the State of Maryland enjoyed joint access to all documents and patient medical records through a shared network drive called Sharepoint. The records on Sharepoint would have been responsive to Plaintiff's initial requests for production, but Wexford did not produce them.

Instead, in January 2017, Wexford moved to stay *Monell* discovery, ECF No. 130, understanding that a round of *Monell*-specific discovery requests was in the pipeline. While the individual phase of this case was progressing, Wexford learned it would lose its contract with the State of Maryland, and along with it, its access to Sharepoint. But Wexford took no steps to preserve relevant documents or inform Plaintiff that it would be losing access to the documents she had already requested.

After the individual phase of this case ended, Plaintiff requested a broad set of medical records that would allow her to develop her *Monell* claim. Ex. D (2019 Requests for Production to Wexford), at Request Nos. 3, 4. In response, Wexford did not object to producing certain

categories of responsive medical records but stated that when its contract with Maryland ended in 2018, it lost access to Sharepoint, and with it the vast majority of documents responsive to Plaintiff's requests for production.

In other words, despite knowing that it would lose access to those records when the new medical contractor took over at the end of 2018, Wexford chose not to preserve documents it placed on the shared drive and instead deliberately let the documents out of its possession. This includes documents that would have contained evidence of deficiencies in medical care, such as internal audits, and particularly relevant to this motion, this also includes medical files for hundreds of detainees that could have otherwise been part of a larger sample. Plaintiff raised this issue with Wexford, and implored Wexford to mitigate its discovery violation by formally and informally requesting that Maryland grant it access to the medical files it had otherwise spoliated. ECF No. 477-2 at 25. Wexford took no such steps.

Wexford in effect used a stay of *Monell* discovery to prevent the disclosure of highly relevant documents. The Court should not permit Wexford to use its discovery violation to its advantage. Accordingly, Plaintiff requests that the Court (1) bar Wexford from arguing that Dr. Herrington's review of detainee medical files is an insufficient sample from which to reach conclusions about Wexford's practices, and (2) issue a spoliation/missing evidence instruction at trial.

**ARGUMENT**

Spoliation is "the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). A party's duty to preserve exists "not only during

litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri*, 271 F.3d at 591 (citing *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)). A party under a duty to preserve information is obligated to "identify, locate, and maintain information that is relevant to specific, predictable, and identifiable litigation." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 522 (D. Md. 2010) (citations omitted). A party who spoliates evidence faces a variety of sanctions at the trial court's discretion. *Silvestri*, 271 F.3d at 590.

There can be no real question here that Wexford's conduct meets these criteria. Plaintiff made a policy/practice claim involving offsite medical care and sent a request for medical records of other detainees who had died at the BCDC or complained about inadequate medical care. Wexford then moved to stay *Monell* litigation, and while that stay was in place, failed to preserve those very same medical records. *Silvestri*, 271 F.3d at 590; *Victor Stanley, Inc.*, 269 F.R.D. at 522. In other words, when Wexford gave up possession of the medical records, not only was litigation anticipated, this lawsuit had actually been filed, with a *Monell* claim, and with discovery requests issued for the very same documents.[1]

First, an appropriate sanction at this pretrial stage is to bar Wexford from benefitting from its own knowing failure to maintain relevant records by arguing that the set of medical records Plaintiff was able to obtain from other sources is too small a sample. Other courts in this District have held that a corporate defendant should not be allowed to spoliate documents containing evidence of their employment practices, and then benefit from that spoliation by

---

[1] At various points, Wexford has claimed that it did not "destroy" the medical files for other detainees, and so it cannot be accused of spoliation. But spoliation is not just about deliberately destroying documents; it includes the obvious other forms that can take, including "fail[ing] to preserve" documents that were in its possession, custody or control. *Silvestri*, 271 F.3d at 590. That is exactly what Wexford did.

4

arguing that the plaintiff had failed to present sufficient evidence to create a dispute of fact about those practices. *Antonio v. Sec. Servs. of Am., LLC*, 701 F. Supp. 2d 749, 761 (D. Md. 2010), on reconsideration in part, No. CIV.A. AW-05-2982, 2010 WL 2858252 (D. Md. July 19, 2010), and aff'd in part sub nom. *Antonio v. SSA Sec., Inc.*, 782 F.3d 173 (4th Cir. 2015).

The same logic applies here. Wexford failed to produce a single detainee medical file to be used in proving Plaintiff's widespread practice claim, because it spoliated on the files. It should not permitted to then take advantage of that discovery violation to argue that Plaintiff's experts did not review enough medical records to draw conclusions about Wexford's practices.

Second, the Court should issue a missing evidence/spoliation instruction to the jury. The Maryland spoliation instruction, attached here as Exhibit E, states as follows:

> The destruction of or the failure to preserve evidence by a party may give rise to an inference unfavorable to that party. If you find that the intent was to conceal the evidence, the destruction or failure to preserve must be inferred to indicate that the party believes that his or her case is weak and that he or she would not prevail if the evidence was preserved. If you find that the destruction or failure to preserve the evidence was negligent, you may, but are not required to, infer that the evidence, if preserved, would have been unfavorable to that party.

WHEREFORE, Plaintiff respectfully requests that this Court (1) bar any opinion or argument that Plaintiff's sample size of detainee medical files is insufficient to reach conclusions about Wexford's widespread practices, and (2) issue a spoliation/missing evidence instruction.

Respectfully submitted,

**SHARON BOST, in her individual capacity and as personal representative of the ESTATE OF FATIMA NEAL**

/s/ Anand Swaminathan
*Attorneys for Plaintiff*

/s/ Steve Art
*Attorneys for Plaintiff*

/s/ Rachel Brady
*Attorneys for Plaintiff*

/s/ Megan Porter
*Attorneys for Plaintiff*


Arthur Loevy
Michael Kanovitz
Anand Swaminathan
Steven Art
Rachel Brady
Megan Porter
LOEVY & LOEVY
311 North Aberdeen St.
Chicago, IL 60607
(312) 243-5900

Masai D. McDougall
Fareed Nassor Hayat
Norrinda Hayat
THE PEOPLE'S LAW FIRM
14908 Notley Avenue
Silver Spring, MD 20905

## **CERTIFICATE OF SERVICE**

      I, Rachel Brady, an attorney, hereby certify that, on November 18, 2022, I filed the foregoing Plaintiff's Motion *in Limine* No. 2 using the Court's CM-ECF system, which effected service on all counsel of record.

                                               /s/ Rachel Brady
                                               Attorney for Plaintiff