# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SHARON BOST, in her individual capacity and as personal representative of the ESTATE OF FATIMA NEAL, | * | |
| | * | |
| | * | Case No. 1:15-cv-03278-ELH |
| *Plaintiff*, | * | |
| *v.* | * | Hon. Ellen L. Hollander, District Judge |
| WEXFORD HEALTH SOURCES, *et al.*, | * | |
| *Defendants*. | * | Hon. A. David Copperthite, Magistrate Judge |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* NO. 8 TO BAR EVIDENCE OF FATIMA NEAL'S IRRELEVANT HEALTH CONDITIONS UNRELATED TO STROKE

Plaintiff SHARON BOST, in her individual capacity and as personal representative of the Estate of Fatima Neal, by her attorneys, respectfully submits this reply in support of Plaintiff's Motion *In Limine* No. 8 to Bar Evidence of Fatima Neal's Irrelevant Health Conditions Unrelated to Stroke (Dkt. 596), stating as follows:

## INTRODUCTION

In her Motion *In Limine* No. 8, Plaintiff sought to bar all references to Fatima Neal's irrelevant prior health conditions that are unrelated to the strokes that she suffered while at the BCDC—namely, hepatitis C, human immunodeficiency virus (HIV), past drug use, and past mental health treatment. Dkt. 596. In their response, the Wexford suggests that this evidence is admissible because "Defendants believed her to be suffering from these conditions on the occasions that they encountered her." Dkt. 628 at 4.[1] But Wexford fails to

---

[1] As far as Plaintiff can tell, Defendants' response does not articulate any reason for admitting Fatima's mental-health treatment that occurred prior to her time at the BCDC, and so Plaintiff does not address that

articulate any legitimate theory of admissibility for Fatima's prior health conditions, and the premise of their argument—that Wexford "believed" that she was suffering from these conditions in October and November 2012—is fatally undermined by the record. This Court should reject Wexford's effort to introduce evidence that will only invite the jury to decide liability or damages on an impermissible basis.

## DISCUSSION

In her motion, Plaintiff set out the reasons that Fatima's prior medical conditions were irrelevant to the strokes that she suffered at the BCDC, her symptoms while there, and her cause of death. Dkt. 596 at 3-5. In addition, Plaintiff explained that Fatima's prior conditions are irrelevant to damages. Dkt. 596 at 5-7. Wexford disclosed no expert to opine about any connection between these liability and damages issues and Fatima's prior conditions. Importantly, Wexford agrees in its response that Plaintiff is correct on these points, but calls them "immaterial." Dkt. 628 at 4. Accordingly, this Court should accept these concessions in ruling on this motion *in limine* and conclude that the parties agree that Fatima's past conditions are not probative of her strokes, her symptoms, her cause of death, or damages. Wexford must therefore articulate some *other* theory of relevance for these past conditions that is not substantially outweighed by unfair prejudice.

Wexford attempts to do so by asserting that they "believed" Fatima was suffering from these conditions when they encountered her. Before turning to the merits of that theory, it should be noted that this premise of Wexford's argument—that they "believed" Fatima was suffering from these conditions at all relevant times—is a very thin reed on which to base admission of this evidence. First, Fatima was *not* suffering from these conditions when

---

past condition.

defendants encountered her. As set out in Plaintiff's motion, the scant and unreliable evidence that exists in the record about these conditions suggests that they were either (1) completely controlled and undetectable (hepatitis C and HIV), or (2) things that Fatima had suffered from long ago, well before defendants interacted with her (drug use and mental health). *See* Dkt. 596 at 2-3. Second, Wexford's contention that its providers "believed" Fatima was suffering from these conditions when they interacted with her is contradicted by their own testimony that they had no recollection of her at all. *See* Plaintiff's Response in Opposition to Summary Judgment, Dkt. 228, at 26 & n.11. Third, to the extent that Wexford is arguing its providers "believed" Fatima was suffering from these conditions because those conditions are noted in medical records, a number of the individual defendants testified that they did not review medical records. *See* Dkt. 273-5, (Wiggins Dep.), at 125:7–126:1, 127:6-18; Dkt. 273-6 (Jamal Dep.), at 403:17–404:6. Moreover, there is no indication in the records that the individual defendants were making treatment decisions in response to these prior conditions—the conditions are simply listed in their records. *See generally* Exhibit 20 to Dkt. 228 (Plaintiff's Response In Opposition to Summary Judgment) (Fatima Neal Medical Records) (filed under seal). And finally, there is additionally no indication that the individual defendants themselves documented these conditions; as the individual defendants testified, chronic conditions are part of the electronic medical record that is autopopulated. *See, e.g.,* Dkt. 225-94, Highlighted autopopulated records, at 1-2; Dkt. 225-49, Afre Dep., at 261:2-4.

But even if one took Wexford at its word that its providers "believed" that Fatima was suffering from her prior medical conditions when they interacted with her, that is not a theory of relevance or a reason to admit the evidence. Again, Wexford concedes that the evidence is not relevant to Fatima's strokes, her symptoms, the cause of her death, or Plaintiff's damages.

So the only disputed issue left to which these conditions could be relevant—and the only issue that pertains to the individual providers own knowledge—is whether Wexford implemented policies or practices that resulted in deliberate indifference to Fatima's serious medical condition. For Fatima's prior medical conditions to be relevant to that issue, there would have to be some evidence in the case that these conditions actually affected the former individual defendants' decisions about what treatment to provide to Fatima—more accurately, that they affected the providers' decision not to send Fatima to the emergency room. In other words, Wexford would have to have evidence that its providers they chose not to treat Fatima because they knew of other medical conditions unrelated to strokes from which she suffered.

There is no such evidence. In reality the only treatment provided to Fatima was painkillers. There is no indication in the record that this treatment was provided for any of Fatima's prior conditions. And there is no indication in the record that Wexford chose to refuse Fatima any other treatment because of their purported awareness of Fatima's prior conditions. Without supplying some evidentiary connection between their purported "belief" that Fatima suffered from prior medical conditions and their deliberate indifference—a connection they do not provide in their response brief—Wexford's argument to admit this evidence should be rejected.

Lastly, Wexford does not respond at all to Plaintiff's contention that it would be unfairly prejudicial to allow Wexford to testify or present arguments about Plaintiff's unrelated medical conditions. In their response, they simply assert that the evidence is relevant, without confronting the fact that Rule 403 sometimes calls for the exclusion of relevant evidence.

4

Compounding the reasons for exclusion under Rule 403 that are outlined in Plaintiff's motion *in limine* is Wexford's concession, discussed above, that Fatima's prior conditions are not relevant to Fatima's strokes, her symptoms, her death, or her damages. Those concessions conclusively shift the Rule 403 balance in favor of barring all of this evidence. If Wexford is allowed at trial to discuss Fatima's past medical conditions, it will invite the jury to decide the case on precisely these improper grounds. For example, the jury might speculate about whether one of these conditions contributed to Fatima's death, when the parties agree they did not. Or the jury might improperly devalue Fatima's life based on these conditions and reduce its damages award, despite that all agree that there is no evidence in the record establishing a connection between these conditions and Plaintiff's damages.

In this respect, it is startling to read Wexford's statement in their response that "Ms. Neal was not an individual in perfect health. The jury should not be given the impression that she was." That statement is of course nothing more than an argument for admitting this evidence so that the jury will use it improperly. It demonstrates that what Wexford really wants is for the jury to use this evidence in deciding the very things that Wexford concedes this evidence has  no bearing on. Wexford's telling admission demonstrates that this is precisely the sort of evidence that Rule 403 demands should be excluded, even if Wexford can articulate some marginal relevant purpose for its admission.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff respectfully that this Court grant Plaintiff's motion *in limine* 8, Dkt. 596.

Respectfully submitted,

/s/ Anand Swaminathan
*Attorneys for Plaintiff*

/s/ Rachel Brady
*Attorneys for Plaintiff*


Arthur Loevy
Michael Kanovitz
Anand Swaminathan
Steven Art
Rachel Brady
Megan Porter
LOEVY & LOEVY
311 North Aberdeen St.
Chicago, IL 60607
(312) 243-5900

Masai D. McDougall
Fareed Nassor Hayat
Norrinda Hayat
THE PEOPLE'S LAW FIRM
14908 Notley Avenue
Silver Spring, MD 20905

## <u>CERTIFICATE OF SERVICE</u>

I, Anand Swaminathan, an attorney, hereby certify that, on February 3, 2023, I filed the foregoing Reply using the Court's CM-ECF system, which effected service on all counsel of record.

<u>/s/ Anand Swaminathan</u>
Attorney for Plaintiff