IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SHARON BOST, in her individual capacity and as personal representative of the ESTATE OF FATIMA NEAL, *Plaintiff*, v. WEXFORD HEALTH SOURCES, *et al.*, *Defendants*. | * * * * * * * * | Case No. 1:15-cv-03278-ELH  Hon. Ellen L. Hollander, District Judge  Hon. A. David Copperthite, Magistrate Judge |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 9 TO BAR DEFENDANTS FROM TESTIFYING ABOUT AFTER-ACQUIRED EVIDENCE UNKNOWN TO THEM AT THE TIME THEY TREATED FATIMA NEAL**

Plaintiff SHARON BOST, in her individual capacity and as personal representative of the Estate of Fatima Neal, by her attorneys, respectfully submits this reply in support of Plaintiff's Motion *in limine* No. 9 to Bar Defendants from Testifying About After-Acquired Evidence Unknown to Them at the Time They Treated Fatima Neal (Dkt. 597), stating as follows:

Wexford "generally does not have any objection to the relief Plaintiff requests, precluding them from testifying about medical conditions (or potential medical conditions) of which they had no knowledge, such as Ms. Bost's hereditary bleeding disorder, Ms. Neal's risk of cataracts, fused dystrophia in her eyes, degenerative bone disease, or a sexual assault that occurred four years before her death." Dkt. 628, at 2. The remaining dispute involves only Fatima Neal's eyeglasses.

The parties appear to agree that, to the extent Wexford can identify an individual provider who actually believed, at the time of treating Fatima, that Fatima suffered from a visual

1

impairment for which she wore glasses, that individual defendant should be allowed to testify as such. The corollary is also true: individual defendants who cannot establish that they had actual knowledge that Fatima wore glasses should not be able to testify about it.

Based on the evidence in the record, only one provider could possibly lay the foundation at trial that she knew Fatima needed glasses: former Defendant McNulty. Wexford pointed to no evidence that any of the remaining former defendants knew Fatima wore glasses and thus might have based their decisions not to provide any medical treatment on that fact.

Wexford asserts that the record supports that former Defendant Wiggins was aware at the time Fatima started having strokes that Fatima wore glasses, but the evidence they cite falls far short of that assertion. Wexford points to four medical records from before Fatima's medical crisis that identify her as needing glasses. Former Defendant Wiggins's name appears on only one of those records—an intake physical from nearly two months before Fatima started having strokes. Dkt. 330-1, Medical Records, at 2. In a September 8, 2012 infirmary note, former Defendant Wiggins recorded: "Corrective Lenses: Yes," and a history of "vision impaired." *Id*. But former Defendant Wiggins disclaims any memory of Fatima, Dkt. 273-5 (Wiggins Dep.) at 9:4-11:9, and nothing in the record comes close to suggesting that former Defendant Wiggins ever reviewed that note or remembered making it. To the contrary, former Defendant Wiggins testified that she does not review a patient's file during treatment. *Id.*, at 125:7–126:1, 127:6-18. Accordingly, unless she abandons her earlier testimony, she should not be allowed to now claim that she was aware of Fatima's glasses.

Defendants also cannot lay foundation for any of the remaining Wexford employees to testify that Fatima needed glasses. Nearly every remaining Wexford defendant denies any memory of Fatima, Ex. A, Ohaneje Dep., at 10:12-20; 12:23-16; Dkt. 273-3 (Afre Dep.) at 20:6–

2

11; Ex. B (Obadina Dep.), at 12:5111, and the only others remember very little, Dkt. 273-6 (Jamal Dep.) at 11:21-13:13; Ex. C (Atta Dep.), at 22:3-12; Ex. D (Ajayi Dep.) at 18:1-15; Dkt. 273-4 (El-Sayed Dep.) at 15:2-5. Indeed, none of them claim to remember that Fatima wore glasses, let alone that they actually took such information into consideration during their treatment of her. So unless they completely contradict their deposition testimonies and claim suddenly improved memory 11 years later, they cannot lay the foundation, and should thus be barred from offering speculative and confusing testimony to the jury about a fact that was not part of their decision-making.

    Wexford argues that even those former Defendants who have not testified that they knew Fatima wore glasses can still testify about her glasses because they might have learned that fact in looking at her file, which contained scattered and buried references to her vision impairment. As an initial matter, several of the former Defendants acknowledge that they do not review a patient's records. *See* Dkt. 273-5 (Wiggins Dep.) at 125:7-126:1, 127:6-18; Dkt. 273-6 (Jamal Dep.) at 403:17-404:6. And even for those who testified that they generally review a patient's medical records during their course of treatment, *see* Dkt. 273-3 (Afre Dep.) at 201:3-18; Dkt. 273-4 (El-Sayed Dep.) at 170:19-172:21, without more—in particular, establishing that their common practice included a review of all of the prior medical records, or enough of them going back to the weeks and months-old references to glasses, or the particular types of records that contained information about Fatima's glasses (*e.g.*, intake forms), or even that they followed their common practice in this case—it is not enough. Put simply, no remaining Wexford defendant ever testified that he or she knew Fatima wore glasses, and barring a dramatic about-face, there is no evidence from which they can establish otherwise.

Finally, there is also nothing in the record to establish whether any of the providers believed that Fatima's "vision impairment" was the type that would affect her ability to see to the extent that she was bumping into things and crying out that she could not see. Dkt. 357-4 (Sexton Letter) at 607–08. Without any link between the severity or type of vision impairment and the symptoms she was expressing, whether any of the former Defendants knew she sometimes wore glasses is irrelevant.

Therefore, Wexford should be barred from speculating about Fatima's need for glasses unless they can lay foundation for that claim. To do so, its providers would have to testify that they actually believed she needed glasses at the time, or that they had a common practice that they followed in this case that made them aware of the reference to glasses in Fatima's medical records. For all of the reasons above, Wexford or its providers have offered no such testimony, and so unless they offer very different testimony on the stand at trial, this court should grant Plaintiff's motion *in limine* to bar defendants from testifying about after-acquired evidence unknown to them at the time they treated Fatima.

Respectfully submitted,

/s/ Anand Swaminathan
*Attorneys for Plaintiff*

/s/ Rachel Brady
*Attorneys for Plaintiff*

Arthur Loevy
Michael Kanovitz
Anand Swaminathan
Steven Art
Rachel Brady

4

Megan Porter
LOEVY & LOEVY
311 North Aberdeen St.
Chicago, IL 60607
(312) 243-5900

Masai D. McDougall
Fareed Nassor Hayat
Norrinda Hayat
THE PEOPLE'S LAW FIRM
14908 Notley Avenue
Silver Spring, MD 20905

## **CERTIFICATE OF SERVICE**

      I, Anand Swaminathan, an attorney, hereby certify that, on February 3, 2023, I filed the foregoing Reply using the Court's CM-ECF system, which effected service on all counsel of record.

/s/ Anand Swaminathan
Attorney for Plaintiff